## HELM v. MICKLESON.
## TEMPLETON v. SAME.

No. 8369—Opinion Filed Nov. 20, 1917.

(170 Pac. 705.)

**1. Money Received—Right of Action.**

Where one has money of another which he in good conscience and equity has no right to retain, an action will lie to recover the same.

**2. Principal and Agent — Fraud or Deceit of Agent—Right of Action.**

The evidence here shows that H. and T. were residents of Pennsylvania and were interested in some oil and gas leases with M., and that M. had entire management thereof and was relied upon to act for them, and by misrepresentation he induced them to sell their interest and to assign the same to him believing a sale of the entire property was to be made by him to another for a nominal sum, but M. without their knowledge or consent acquires title to himself and in a short time sells the entire leases for an enhanced sum, many times more than he paid. Held, the same established a cause of action, and it was error to sustain a demurrer thereto.

(Syllabus by Hooker, C.)

Error from District Court, Tulsa County; Conn Linn, Judge.

Suits by Cyrus Helm and by J. E. Templeton against D. D. Mickleson. Demurrer to evidence sustained, and plaintiff in each case brings error. Reversed, and cause remanded for a new trial.

Rowland & Talbott and J. P. O'Meara, for plaintiffs in error.

Biddison & Campbell, for defendant in error.

Opinion by HOOKER, C. There are two suits involved here, one by Cyrus Helm and the other by J. E. Templeton, against the defendant in error to recover a sum of money alleged to be due by him to said parties for the sale of an oil lease which was owned jointly by all of said parties, and another.

It appears that the plaintiffs in error, the defendant in error, and one Elijah Meley jointly owned some oil and gas leases in the state of Oklahoma. The plaintiffs in error were nonresidents of the state residing in the state of Pennsylvania, and they owned an undivided one-eighth interest each in said leases, and the defendant in error and the said Elijah Meley, who was his father-in-law, jointly owned an undivided three-fourths interest therein. The plaintiffs in error never saw these leases, but had purchased their interest therein from the defendant in error through Meley, whom they had known for a number of years, and they trusted to the defendant in error and Meley to give to them the proper advice and instructions with reference to the management of their interest in these leases in the state of Oklahoma. In fact, the operation and the management was left entirely to the defendant in error. And in the latter part of 1910, at a time when it did not appear profitable to operate the leases in the state of Oklahoma, the defendant in error, Mickleson, wrote to the plaintiffs in error at their address in Pennsylvania that the leases were unprofitable and advised them of a prospective sale thereof of $1,050 to one J. B. Myers and requested said plaintiffs in error to send assignments in favor of the said Myers, with draft attached, to the bank at Cleveland, Okla. This communication was by letter of date August 24, 1910, which is as follows:

"D. D. Mickleson,
"Practical Oil and Gas Well Contractor.
"Estimates Furnished on Application.

"Cleveland, Okla., Aug. 24, 1910.

"Mr. J. E. Templeton, Tiona, Pa.—Dear Sir: I have been going to write you for some time, but have been very busy drilling three wells about 60 miles from home, have been at home but a few times this summer, consequently have not written several letters which I intended to. I have been putting forth every effort possible to get in shape to drill the two wells on the James Widener lease by Feb. 15, 1911, which is required if we hold this lease good, but like yourself it seems that everything that I have taken hold of the past several months have left me worse than ever, consequently I cannot see how I can handle the interest I have for drilling the two wells required, Mr. Meley is not in shape to carry his interest at the present time, so we have decided to try and get what we can out of it as soon as possible, we have an offer of $1,050 for the leases and all the material, providing we can get the transfer made in time for the other party to get the two wells drilled which is necessary to hold the Widener lease good. I have been paying the rental on the J. M. Sharp 160 acres, and the E. G. Findley 80 acres myself, thinking that we might yet realize something out of them, but business has been pretty slow and no one seems inclined to offer more than $500 to $650 and pull the junk from the gas well, and the only reason why this party will pay that amount is he is figuring on drilling these two wells and keeping the leases good for some future time. Now if you would like to take hold of these leases yourself you have first chance at the price offered $1,050, but if not we would be obliged if you would make an assignment of your one-eighth interest to J. B. Myers attach sight draft for $85.02, and mail same to the First National Bank at Cleveland, Okla., where he will take it up and pay me the difference.

"I am enclosing herewith statement of expense from Jan. 1 to Aug. 31, 1910, which I think will explain all.

"I regret very much that the proposition has turned out as it has, but I have been the heaviest loser of any one, and was least able to stand it, but it is one of the few deals that I have invested in and got no returns, yet I feel that my time will come some time, if I continue to take a chance when I have an opportunity.

"Under more favorable circumstances I feel yet that the leases are worth all we paid for them and more to, but those conditions are higher priced oil, and the prospects are no brighter today for a favorable change than a year ago.

"I am writing Cyrus Helm by this mail, and making him the same offer, so if you care to take our interests at the above rate, you and he can make any arrangements

you wish, and if not we would like to have you decide as soon as possible so Mr. Myers will know what to expect.

"You, of course, understand that the Exkhardt Paulus lease of 160 acres has become null and void, it being a one year lease ending April 2, 1910, and the J. H. Allen 160 going by suspension of operations.

"Awaiting your earliest reply as it will be absolutely necessary to close the deal within the next two or three weeks if Mr. Myers takes it as it may take some time to complete arrangements for the drilling of two wells by the first of February.

"Yours, truly,	D. D. Mickleson."

The above letter was to Templeton, and the letter to Helm of the same date is substantially the same. A few days thereafter the defendant in error, Mickleson, induced his father-in-law, Meley, to write to Helm and Templeton the following letter:

"Cleveland, Okla., Aug. 26, 1910.

"Friend Helm: Mr. Mickleson and I have been talking the matter over and came to the conclusion that we made a mistake when we ask you to make the assignment over to Mr. Myers, for this reason, Mr. Myers will not take these leases or the junk at any price, if he hasn't got the time to drill those two wells on the Widener, therefore we think it would be much better for you to transfer those leases back to Mickleson, just the same as you got them from him, this would give him the privilege to sell to some other party without sending to you for another assignment, as a few days might be the means of losing a good sale, and another reason is that it may be necessary to release Paulus and Allen farms and by making the assignment to Mickleson it would save any further trouble on your part.

"You can make the assignment with sight draft attached, to Mickleson, through the 'First National Bank of Cleveland, Oklahoma,' the same as mentioned in Mickleson's letter of Aug. 24.

"In regards to Tiona lease I would rather see Mr. Templeton run the lease than any one else, as he understands the business.

"I remain

"Yours truly,	E. Meley."

In response to this letter, Helm on September 2, 1910, reassigned his interest in the leases in question to Mickleson, and at the time wrote him the following letter:

"Earl E. Helm, Manager.

"Local and Long Distance Telephone

"Connections through Kittanning, Pa.,

"Musgrove Supply Company.

"General Merchandise.

"Musgrove, Armstrong County, Pa.,

"Sept. 2, 1910.

"Friend Elijah: I received Mickleson's letter, also yours requesting me to have assignment made to Mickleson which I have done, and am enclosing it herewith. Mr. Mickleson, on delivery of assignment by you to him can send me a draft for $111.33 as per your & his letters, and we will call the distressing incident closed. All I ask is a square deal for my one-eighth out of the wreck.

"Yours truly,	Cyrus Helm."

In September 6, 1910, Templeton reassigned his interest in said leases to Mickleson and forwarded same to the First National Bank of Cleveland, Okla., as directed in Mickleson's and Meley's letters.

*About October 5, 1910, Mickleson addressed Helm as follows:*

"D. D. Mickleson,

"Practical Oil and Gas Well Contractor.

"Estimates Furnished on Application.

"Cleveland, Okla., Oct. 5, 1910.

"Mr. Cyrus Helm, Sherrett, Pa.—Dear Sir: I herewith inclose you New York draft for $111.33 being payment for your assignment of your interest in leases and junk.

"I regret very much that the proposition here has turned out as it has, but I presume I have felt the loss more keenly than another concerned, as I have had the heaviest end to carry all the way through, but it is not my first disappointment, and I don't expect it to be my last, although I hope that I may make a hit of it some time.

"Wishing you future success,

"Yours truly,	D. D. Mickleson."

And about the same time Templeton took up the draft which was forwarded to Cleveland bank.

On December 28, 1910, Mickleson sold three of the leases for a consideration of $13,227.60. In a short time thereafter Helm and Templeton ascertained that these leases had been sold by Mickleson for this sum, and they demanded payment of their proportional part thereof, which Mickleson refused, and this suit was instituted to recover a one-eighth interest therein, less certain expenses, leaving the said amount of $1,522.20, for which judgment is asked with interest from December 28, 1910, at the legal rate.

It appears from the evidence here that Mickleson at no time contemplated a sale of the entire leases to Myers as reported by him to Helm and Templeton, but that the arrangement between Mickleson and Myers was to the effect that Myers was to acquire a one-half interest in the same based upon a valuation of $1,050, but that Mickleson

afterwards refused to permit Myers to have any interest therein at all, and without the knowledge of Helm and Templeton acquired sole ownership of these leases in the manner and form stated above.

The evidence introduced in the trial court was as detailed above, and, at the conclusion of the plaintiffs' evidence, the trial court sustained a demurrer offered by the defendant in error, Mickleson, from which an appeal is had here.

From an examination of the evidence the conclusion is inevitable that Mickleson did not deal fairly nor truthfully with the plaintiffs in error. They were nonresidents of this state associating themselves with him and his father-in-law, relying and trusting upon their honor and integrity to deal on the square with them. He acted for them, managed and controlled these leases for some time, and they paid their proportional part of the expenses. In the latter part of 1910 he advised them that the leases were unprofitable and that, in his judgment, it was for the best interest of all of them to make a sale to this one Myers for the consideration of $1,050. He urges that this sale be made, and led them to believe that, in his judgment, all their interest would be conserved by making a sale of the entire leases to Myers at this price. This was a misrepresentation, for at no time did he contemplate making a sale of the entire leases to Myers, for his arrangements with Myers only embraced a one-half interest therein. He first requested the plaintiffs in error to reassign their interest in these leases to Myers, but in a few days thereafter caused his father-in-law, with whom the plaintiffs in error had been acquainted for 25 years, to request them to reassign their interest to him, which they did, and in the course of a few weeks he paid these drafts, refused to permit Myers to acquire any interest therein, and appropriated the entire leases to himself. The reassignment to him was procured through misrepresentations, and at the time the same was executed by the plaintiffs in error it was so done with the belief upon their part that the same was for the use and benefit of Myers, or, in the event he refused to consummate the deal, for the use and benefit of some other purchaser other than the defendant in error. At no time did Mickleson notify or advise the plaintiffs in error that he contemplated purchasing their interest himself, but at all times lead them to believe that it was his intentions and desire to sell the entire property to Myers or to other parties who might become interested therein.

Mickleson in dealing with Helm and Templeton with reference to the purchase of their interest in these leases did not exhibit that degree of fair dealing which the confidential relationship of the parties justified, but, upon the contrary, deceived them by his conduct and induced them to act by his representations in a manner which, as prudent business men, they might not have done had the true situation been revealed to them. When they ascertained the true state of facts, they had a right to demand of him that he account to them for their interest in the leases sold.

This court, in Brooks v. Bank, 26 Okla. 56, 110 Pac. 46, 30 L. R. A. (N. S.) 807, said:

"An action will lie to recover a sum certain whenever one has the money of another which he in equity and good conscience has no right to retain."

And in the body of the last-named case it is said:

"We gather from the briefs that the trial court predicated its action on the ground that the evidence failed to disclose any privity of contract on which to found the action. We think there is sufficient privity. This is established when the evidence discloses that one person has another's money which he in equity and good conscience has no right to keep. In such a case there arises an implication of law that he will pay it over. This was so held by this court in Allsman v. Oklahoma City, 21 Okla. 142, [95 Pac. 468, 16 L. R. A. (N. S.) 511, 17 Ann. Cas. 184]. * * *

"The doctrine is thus broadly stated by the Supreme Court of the United States in * * * Gaines v. Miller, 111 U. S. 395, 4 Sup. Ct. 426, 28 L. Ed. 466, where the court said: 'Whenever one person has in his hand money equitably belonging to another, that other person may recover it by assumpsit for money had and received. * * *' "

The uncontradicted evidence here establishes that the plaintiffs in error relied upon the judgment of Mickleson in all of their transactions had in connection with these leases. They did as he suggested. They trusted him implicitly. And whether we view the situation as one of principal and agent, or as partners jointly interested in this enterprise, the same result is reached; that is, that Mickleson abused the confidence imposed in him, and, in order to procure the reassignment of their interest in these leases to him, he failed to inform the plaintiffs in error of the true situation and induced them, by reason of this concealment, to part with their interest in this property.

A demurrer to this evidence admits the truth of all of the evidence introduced, and

of all the facts which that evidence tends to establish, as well as every fair and reasonable inference to be drawn therefrom. D'Yarmett v. Cobe, 51 Okla. 113, 151 Pac. 589. Now, does this evidence, when measured by this rule, state a cause of action in behalf of the plaintiffs in error and against the defendant in error? We think so.

With reference to the introduction of Exhibit K, which is a letter of October 7, 1910, to Meley, making inquiry with reference to what disposition had been made of these leases and to its completion, we think should have been admitted in evidence as a part of the correspondence or res gestæ of this transaction, as the same was written before the plaintiffs in error had received the payment of the money for their part of the leases, and it is clearly competent as a part of the transaction as much as any conversation between the parties would have been.

The judgment of the lower court is therefore reversed, and this cause remanded for a new trial.

By the Court: It is so ordered.