### CLARK v. PRATT et al.

No. 11341—Opinion Filed Nov. 20, 1923.

1. **Brokers—Real Estate Agents—Fidelity to Principal.**

A real estate broker who contracts to sell or lease the lands of another must be loyal and faithful to the interest of such other person, in respect to such business or purposes. He cannot lawfully serve or acquire any private interest of his own in opposition to it, or avail himself of any advantage that his position may give him to profit beyond the agreed compensaton for his services. He may not speculate for his gain in the subject-matter of the employment.

2. **Same—Sale of Oil Lease by Broker to Self—Cancellation of Lease for Fraud.**

Where a broker contracts to sell an oil and gas lease on 160 acres of land of his principal at the best available price, but not less than $4 net to his principal, at a commission of $1 per acre, and for convenience a lease is drawn up and executed, in blank except as to amount and the purchaser's name, and while the fiduciary rela-

tions existed a well was brought in nearby and the price of leases advanced rapidly and the broker inserted his own name in the . lease executed in blank and inserted $640 as the consideration and told his principal he had sold it before the well was brought in, and a short time thereafter said broker sold a lease on a 40 acres of the lease for $2.000, held, in a suit to cancel the lease so surreptitiously obtained by the broker, the court will decree a cancellation of the lease and refuse to permit the broker to take advantage of his fiduciary relations.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error From District Court, Stephens County; Cham Jones, Judge.

Action by Diah S. Pratt and Emma J. Pratt against M. E. Clark. Judgment for plaintiffs, and defendant brings error. Affirmed.

This is an action for the cancellation of an oil and gas lease executed by Diah S. Pratt and Emma J. Pratt to_____ on or about the 2nd day of March, 1918. Diah S. Pratt was in the town of Duncan and met M. E. Clark, who was a real estate agent and oil lease broker, and Pratt contracted with Clark to sell a lease on 160 acres of land belonging to him and under the terms of the contract Pratt was to receive $640, or $4 an acre. Clark was to have 10 days to effect the sale of the lease. The lease was executed on the 2nd day of March, with the lessee's name left blank, as Clark told Pratt that that was the customary way of making them, and that when he sold the lease he would insert the name of the purchaser. About the 9th day of March, a well was brought in by the Magnolia Petroleum Company about a mile from Pratt's land, and the prices of leases advanced very rapidly. Pratt went into Duncan on the 11th day of March and met Clark and told him he wished to withdraw the sale of the lease, as the price of the leases had come up. Clark replied that he had already sold it and had deposited the money, $640, in the First National Bank of Duncan to his (Pratt's) credit. Pratt said something about wanting to buy the purchaser off, but Clark told him that if it were himself he would turn it back to him, but the party that bought it did not want to sell it. Just whether Clark had deposited the money in the bank, at the time he first met Pratt, is not clear, but he did deposit it sometime during the forenoon of March 11. On the 12th day of March, he had a merchant, who lived in the town, by the name of Wilson, let him insert his name in the lease as the purchaser and then assign it to him. He explained to Wilson that as he had taken the acknowledgment of the lease, he would

have to have someone's else name inserted in the blank and have them assign it to him. Wilson consented to his name being put in the lease, and on the same day and at the same time assignment of the lease was made to Clark. Pratt did not find out who had bought the lease until some time afterwards. It also appears that after Clark had obtained the lease, as above set forth, he sold an assignment of 40 acres of the lease to one J. R. Prentice for $2,000. Pratt did not learn this until some time afterwards, when he heard that Clark had sold 40 acres to Prentice for $2.000. He then looked the matter up and found that Clark had in fact bought the lease himself; that Wilson never bought the lease, never paid anything for it, and never had anything to do with it except to permit his name to be inserted in the lease and to make the assignment of the lease to Clark. Suit was instituted by Pratt on the 6th day of July, 1918, asking to cancel the lease except as to the 40 acres sold to Prentice, as he had learned that Prentice was an innocent purchaser for value, and asked for a cancellation of the sale of the lease and for judgment against Clark for the amount he received from Prentice, less his commission.

To this petition, the defendant, Clark, filed answer consisting of a general denial, and admitting that the lease attached to plaintiff's petition was a copy of the original lease executed by plaintiffs on the 2nd day of March, 1918, and admitting the assignments appearing on the lease, and admitting that J. R. Prentice was a holder in good faith of an assignment of 40 acres covered by the lease, and admitting that the Magnolia Petroleum Company brought in a well on March 9, 1918, and that thereafter on the 11th day of March, he deposited $640 in payment for the oil and gas lease in controversy in this suit, and he alleges that Diah S. Pratt had received the $640 and had never tendered same back to him, and that said Pratt has never returned the money received by him, nor offered to return the same, and had thereby waived any right or claim he might have had to have said lease set aside or cancelled. The case was tried on the 22nd day of April, 1919, to the court and a jury, and the court submitted on request of counsel special findings for the jury to answer. The jury afterwards returned its answer to the special findings, and upon that verdict the court entered judgment for the plaintiffs, Diah S. Pratt and Emma J. Pratt, for a cancellation of the lease of the lands contained in the lease except the 40 acres sold to Prentice, and as to that the court gave the plaintiff, Pratt, judgment for the

$2,000 that Clark received from Prentice, less the $640 deposited in the bank by Clark to Pratt's credit, and Clark's commission on the sale of the 40 acres to Prentice, amounting to $40, and entered judgment for $1,320 against. Clark. A motion for new trial was filed and overruled and time taken to prepare and serve case-made, which was done, and the case-made settled and signed, and a petition in error with case-made attached was filed in this court on April 20, 1920.

W. C. Stevens, J. H. Cline, and E. L. Richardson, for plaintiff in error.

E. H. Bond, for defendant in error.

Opinion by MAXEY, C. The plaintiff in error has filed seven assignments of error, which are as follows:

"(1). That the court erred in overruling the demurrer of the plaintiff in error to petition of plaintiffs below as the same was .amended.

"(2) That the court erred in overruling the motion of plaintiff in error to set aside answers to special questions.

"(3) The court erred in overruling the motion of the plaintiff in error for judgment notwithstanding the special questions and answers thereto.

"(4) The court erred in rendering judgment for defendants in error cancelling said oil and gas lease.

"(5) The court erred in rendering judgment for the sum of $1,320 or any sum for for defendants in error against the plaintiffs in error.

"(6) The court erred in overruling the motion of the plaintiff in error for a new trial.

"(7) The court committed other errors prejudicial to the rights of plaintiffs in error which are apparent on the face of the record."

The plaintiff in error in discussing his several assignments of error contends, first, that the petition fails to state a cause of action, and that demurrer thereto should have been sustained on the ground that this is an action for the rescission and cancellation of a written instrument, and that there is no allegation of an offer to return the consideration admittedly paid by the plaintiff in error, and on this proposition cites numerous authorities from the Supreme Court of Oklahoma, among which are the following: Stowe v. Martin, 23 Okla. 561,· 102 Pac. 128; Pugh v. Stigler, 21 Okla. 854, 97 Pac. 566; Dubois v. Andrews, 57 Okla. 227, 152 Pac. 440; Freeman v. Camp, 53 Okla. 385, 156 Pac. 1193; Herron v. Harbour, 57 Okla. 71, 155 Pac. 506; Myler v. Fed. Mut. Ins. Co., 64 Okla. 293, 167 Pac. 601; Trimble v. Minn. Thr. Co., 10 Okla.. 578, 64 Pac. 8; Mosier v. Walter, 17 Okla. 305, 87 Pac. 877; 4 R. C. L., section 5, page 490; 9 C. J., sec. tion 27, page 1172; 9 C. J., section 208, page 1260, and cases cited, note 96; Jeffers v. Forbes, 28 Kan. 174; Neal v. Reynolds, 38 Kan. 432. 16 Pac. 785.

Counsel also insists that the defendants in error are estopped by their conduct, and quotes from the testimony of Diah S. Pratt in support of the proposition of estoppel, and insists that inasmuch as Clark did not sell the 40 acres to Prentice until the 8th day of April, 1918, that all of these transactions were matters of proper record, and that Pratt could have known it if he had used proper diligence. Counsel for plaintiff in error also contends that the judgment of $1,320 against defendant Clark was erroneous, and that the entire judgment was contrary to the evidence.

We have carefully read the testimony of all of the witnesses in the case, and the evidence impresses us with the fact that the idea of buying the lease himself never entered Clark's head until after the Magnolia Petroleum Company's well was brought in and the price of leases began to go up, and we do not believe that Clark deposited the money in the bank for Pratt until after Pratt had seen him and told him he wanted to withdraw the lease from the market, and that the entire scheme to get this lease by Clark was all after he had seen Pratt and Pratt had asked him to take the lease off the market. It was then that Clark got busy and deposited the $640 in the bank and saw Wilson and got his consent to put his name in the blank in the lease and make the assignment to him. The evidence shows that the price of leases had increased very rapidly in the last two or three days. The testimony was that price of a lease on Pratt's land on the 11th or 12th day of March was anywhere from $50 to $75 an acre. We think Clark acted in bad faith with Pratt, and that he undertook to take advantage of the increase in the value of leases, after the Magnolia Petroleum Company's well was brought in and that he misled Pratt by telling him that he had already sold the lease and made Pratt believe that he had sold it for $640, when in fact Clark had taken it over himself. The defendant in error has filed answer brief in the case, and in answer to the first proposition discussed in plaintiff in error's brief, that is, that under the pleadings, the plaintiff, Pratt, was not entitled to recover because he did not return, or offer to return, the money that Clark had deposited in the bank to his credit, contends that it was not necessary to return,

or offer to return, the $640 that Clark had left in the bank, as Clark held at that time $2,000 that he had received from Prentice, which Pratt claimed was, of right, his money, and cites as authority for bringing the suit without offering to return the money that Clark had deposited in the bank, 21 R. C. L., section 10, which is as follows:

"Every one—whether designated agent, trustee, servant, or what not—who is under contract or other legal obligation to represent or act for another in any particular business or line of business or for any valuable purpose must be loyal and faithful to the interest of such other in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common sense and honesty as well as of law. The agent is not entitled to avail himself of any advantage that his position may give him to profit beyond the agreed compensation for his services. He may not speculate for his own gain in the subject-matter of the employment * * *. He will be required to account to his employer or principal for any gift, gratuity or benefit received by him in violation of his duty, or any interest acquired adverse to his principal, without a full disclosure, though it does not appear that the principal has suffered any actual loss by fraud or otherwise."

He also cites the case of Helm v. Mickleson, and Templeton v. Same, 66 Okla. 290, 170 Pac. 704, which are from the Supreme Court of Oklahoma, and the syllabus in these consolidated cases is as follows:

"The evidence here shows that H. and T. were residents of Pennsylvania and were interested in some oil and gas leases with M., and that M. had entire management thereof and was relied upon to act for them and by misrepresentation he induced them to sell their interest and assign the same to him believing a sale of the entire property was to be made by him to another for a nominal sum, but M. without their knowledge or consent acquires title to himself and in a short time sells the entire leases for an enhanced sum, many times more than he paid. Held, the same established a cause of action, and it was error to sustain a demurrer thereto."

He also cites the case of Baird et al. v. Conover et al., 66 Okla. 288, 168 Pac. 997, and quotes from the last cited case as follows:

"An agent must not, except with his principal's full knowledge and consent, enter into any transaction concerning the subject-matter of the agency in which he has interests adverse to those of his principal." (Citing numerous authorities.)

And, further, the court said:

"It is certainly a well-settled doctrine that agents must act honestly with their principals, and we think it will be difficult to find a case in which a more glaring breach of duty has occurred than in the instant case. It is the duty of an agent to be loyal to his principal and to act with entire good faith for the furtherance of the interests of his principal in all dealings concerning or affecting the subject-matter of his agency."

These authorities seem to sustain the position of counsel for defendants in error, that the petition was not open to the objection of counsel for plaintiff in error, and that the court properly overruled the demurrer. Mr Black, in his work on Rescission and Cancellation, volume 2, sec. 621, says:

"One seeking the rescission of a contract or other transaction is not required to make a tender or offer or restoration of that which he would be entitled to in any event to retain, that is either by virtue of an original liability of the other party if the contract should be rescinded or under the contract itself if rescission should be refused." * * *

"And where it appears in a suit to rescind a sale of land, that the defendant is indebted for rent and revenues to an amount greater than the purchase price paid for the property and interest thereon, no tender of the price on the part of the plaintiff is required before the institution of the suit. * * *

"Also, in pursuance of this rule, it is held that a sale effected through the false representations of the purchaser may be rescinded by the seller without the return of part payments made, when it appears that the purchaser, from the goods purchased, has sold to third persons an amount at least sufficient to reimburse him for the payments made."

And on the question of a partial rescission, the same author, Mr. Black says in volume 2, sec. 589, of his work on Rescission and Cancellation:

"It has sometimes been held that a court of equity has no power to decree that a contract shall be rescinded in part, being bound as are the parties themselves, by the general rule that the contract must be rescinded in whole or not at all. But the more reasonable doctrine now more generally prevails that a partial rescission may be ordered if that is the only way in which complete justice can be executed as between the parties. For example, where a party by false and fraudulent representations as to the character and quality of his land, induces another to exchange other lands for it, and then conveys a portion of the land thus obtained to an innocent purchaser, so that it is out of his power to reconvey

it and thus wholly rescind the contract, it is competent for a court of equity to decree a partial rescission, and to require the party in fault to pay to the other, in money, the price at which the land taken by him was estimated in the exchange."

This text from Mr. Black has been followed by the Supreme Court of Wisconsin in Mills v. Morris, 145 N. W. 369, and by the Supreme Court of Kentucky in the case of Prewit v. Graves, 5 J. J. Marshall (Ky.) 114, and in the case of Saddler v. Wilson, 40 N. C. 296, and by Hopkins et al. v. Sendaker, 71 Ill. 449.

After a careful consideration of the questions raised in this case, and a reading of the entire testimony, we are inclined to hold that substantial justice has been done; that while the pleadings may have been somewhat defective, we cannot say that that fact has prejudiced the plaintiff in error. The plaintiff in error has, unfortunately, got into a "hole of his own digging," and his conduct, as shown by the record in this case, is not such as to induce us to extend him a helping hand. The judgment of the trial court should be affirmed.

By the Court: It is so ordered.