## EPPERSON et al. v. FIRST STATE BANK OF RINGLING.

No. 22303.    May 1, 1934.

Dudley B. Madden and Walter Hubbell, for plaintiff in error.

J. L. Vertrees, Guy Green, and Anderson & Anderson, for defendant in error.

BAYLESS, J. This is an appeal from the district court of Jefferson county, wherein the First State Bank of Ringling obtained a judgment against L. C. Epperson foreclosing a real estate mortgage. From said judgment, the defendant, L. C. Epperson, brings this appeal.

The parties will be hereinafter referred to as they appeared in the lower court.

The facts in the case are, in substance, A. F. Epperson died intestate on February 23, 1925, leaving L. C. Epperson, his widow, and Mrs. Mary F. Johnson and Mrs. Myrtle Harris, daughters, as his only heirs; and having in the First State Bank of Ringling a deposit amounting to approximately $5,-541.46.

Thereafter L. C. Epperson went to the bank and stated she was without funds to pay funeral expenses and living expenses, and asked that she be permitted to draw upon said deposit, and the bank, realizing they had no authority to pay her checks upon said funds, refused to honor her checks until Harris and Johnson, husbands of the daughters of the deceased, went to the bank and requested the bank to permit L. C. Epperson to draw upon said funds, and upon this request and at the instance of L. C. Epperson, checks were drawn against said deposit in the sum of approximately $4,455.90, which the bank paid. A short time after the last of the checks had been drawn and paid, the bank procured from L. C. Epperson a real estate mortgage indemnifying the bank against loss by reason of its payment of her checks. The mortgage executed by the defendant was regular in all respects except that the following provision was inserted therein:

"This conveyance is intended to secure the First State Bank of Ringling, Okla., for a term of five years from the date hereof, from any loss or liability, by reason of said bank having paid checks drawn by L. C. Epperson on the account of A. F. Epperson, deceased, or on the account of L. C. Epperson in said bank, said checks having been drawn by the said L. C. Epperson and having been paid by said bank from the 6th day of March, 1925, to the 14th day of April, 1926, both inclusive, in the total sum of $4,349.27 for the reason that I, the said L. C. Epperson, drew all of said checks in good faith and received all of the money for which said checks were drawn by me and paid by said bank for my own use and benefit and for the purpose of paying the burial expenses and other expenses incident to the death of my deceased husband, A. F. Epperson. In the event the bank is held liable for paying or cashing any or all of said checks so drawn by me this mortgage is given to secure the amount said bank is held liable for, and is to remain in full force and effect for that purpose only, and in the event that said bank is not held liable for any sum by reason of having paid or cashed said • checks then this mortgage is to be of no force and effect."

On January 5, 1927, G. W. Johnson, husband of one of the daughters of the deceased, and the same person who had theretofore requested the bank to permit L. C. Epperson to draw checks against the deposit of A. F. Epperson, deceased, was appointed administrator of the estate of A. F. Epperson, and thereafter sued said bank for the amount of said deposit and recovered a judgment therefor, which judgment was by the bank paid.

Thereafter the plaintiff commenced its action for the foreclosure of said mortgage, and on February 5, 1931, a jury was waived and the cause submitted to the court, and the court entered judgment in favor of the plaintiff and against the defendant, foreclosing said mortgage and providing that plaintiff have a personal judgment against the defendant for the unpaid residue.

The defendant appeals from said judgment and assigns five grounds, but, as one of these is purely formal and two others are comprehended in the first and fourth assignments, we will confine our consideration to the first and fourth assignments of error, to wit:

"1. The court erred in its finding and judgment that the mortgage sued on is supported by a valid and sufficient consideration."

"4. The court erred in rendering judgment against L. C. Epperson for the unpaid residue of the judgment remaining after the sale of the mortgaged land."

Concerning the first assignment of error, the defendant cites numerous authorities to the effect that plaintiff was a volunteer in paying these checks, and therefore cannot recover; that there existed no moral obligation on the part of the defendant to repay to the plaintiff; that the consideration for the mortgage was a past consideration and therefore insufficient, and that the transaction between the plaintiff and defendant with reference to cashing the checks, if by agreement, was thereby contrary to public policy. In times past, under the strict rule of the law, and probably in some jurisdictions at this time, one who paid money under a mistake of law or fact, or wrongfully, could not maintain an action against a person receiving the money to recover the same, but this is not the rule in this state. In the early case of Brooks v. Hinton State Bank, 26 Okla. 56, 110 P. 46, we said:

"Whenever one person has in his hands money equitably belonging to another, that

other person may recover it by assumpsit for money had and received."

In the above case this court, in discussing the proposition, stated the substance of an opinion of the Supreme Court of Georgia, in Bates, etc., Bank v. Dismukes, 107 Ga. 212, 33 S. E. 175, as follows:

"* * * The proposition elementary, that an action in assumpsit for money had and received would lie whenever one man has received or obtained the possession of the money of another, which he ought in equity and good conscience to pay over; that there need be no privity between the parties or any promise to pay other than that which results or may be implied from one man's having another's money, which he has no right in conscience to retain; that when the fact is proved that he has the money, if he can show no legal or equitable ground for retaining it, the law implies the privity and the promise. * * * The Supreme Court affirmed the judgment of the trial court and on the subject of privity quoted approvingly from Nisbet, J., in Culbreath v. Culbreath, 7 Ga. 68, 50 Am. Dec. 375, where he said: 'It is not founded upon the idea of a contract.' And from Lord Mansfield in Moses v. McFarlan, 2 Burr, 1005, where he said: 'If the defendant be under an obligation, from the ties of natural justice, to refund, the law implies a debt and gives this action, founded in the equity of the plaintiff's case, as if it were upon contract'."

The rule above announced has been followed consistently by this court in the following cases: Helm v. Mickleson, 66 Okla. 290, 170 P. 704; Deming Inv. Co. v. Britton, 72 Okla. 145, 179 P. 468; Avery v. Abraham, 114 Okla. 101, 243 P. 728.

In the case of Avery v. Abraham, supra, adopting the rule announced in Elliott on Contracts, sec. 1372, we said:

"It is a well-settled principle of law that if a party through mistake receives money to which he is not justly or legally entitled and which he should not in good conscience retain, the law regards him as a receiver and holder of the money for the use of the lawful owner and raises an implied promise on his part to pay the same, and on his failure to do so, the owner may maintain an action against him therefor."

Therefore, under the circumstances of this case and the law as announced by this court, the equities and dictates of natural justice combine to make it unjust and unfair that the plaintiff should be led into paying these checks, and thereafter being required by the courts of this state to make the wrongful payment thereof good to the estate of the owner, thereby redounding to the benefit of the defendant, without requiring the defendant to repay the money obtained by these checks to the plaintiff. This, therefore, was a valid and substantial consideration for the execution and delivery of the mortgage as security for the payment of this money.

We next consider the fourth assignment of error. The so-called mortgage does not in itself contain an unqualified promise to pay money. Because of what we have said in discussing the previous assignment of error, because the law implied and raised this promise. Reference to the quotation from said mortgage heretofore made lends some support to the defendant's contention that it is more in the form of an indemnity bond than a mortgage. We cannot see that this makes any difference. If it is a mortgage outright, the law implies the personal obligation upon the debt; and if it is merely a bond or indemnity, there is always the element of the personal obligation with them, unless the same is specifically negatived in the instrument itself. In the judgment of the court the finding was made that the defendant was under obligation to repay the money, but for some reason the journal entry was so drafted as to provide for a personal judgment as to the deficiency only. While this form may be somewhat peculiar, it is not inconsistent with the judgment rendered on a mortgage in this state, because, under the previous holding of this court, even where personal judgment is rendered before the foreclosure judgment, we have held that process will not issue to satisfy personal judgment until the property has been sold; in other words, the judgment holder must look first to the property for payment, and can look to the judgment debtor only for the deficiency. The journal entry of judgment indicates an intent and purpose on the part of the court to render a personal judgment against the defendant, and in this respect must be sustained upon this record.

Therefore, the judgment of the trial court is affirmed.

RILEY, C. J., and SWINDALL, McNEILL, and WELCH, JJ., concur.