William Everett LEE, Jr., Appellant,

v.

STATE of Oklahoma, ex rel. OKLAHOMA
REAL ESTATE COMMISSION,
Appellee.

No. 46078.

Supreme Court of Oklahoma.

Dec. 4, 1973.

O. E. Richeson, Henryetta, for appellant.

Richard W. Gable, Gable, Gotwals, Hays, Rubin & Fox, Tulsa, for appellee.

IRWIN, Justice:

Two complaints were filed with the Oklahoma Real Estate Commission (Commission) against a licensed real estate broker, William Everett Lee, Jr. (Lee). One complainant was Maxine Green (Seller) who had listed 160 acres of her property

for sale with Lee. The other complainants were Junior and Virginia Green (Greens), no relation to Seller, who purchased 80 acres of the listed property from Lee.

On September 18, 1970, the Commission's hearing examiner conducted an investigative hearing on these complaints. Lee, together with the complainants and other witnesses appeared and gave testimony. Thereafter, a hearing was conducted before the Commission on November 5, 1970. The Commission entered its findings of fact and conclusions of law and held Lee's conduct constituted untrustworthy and improper dealings within the meaning of subsection (h), Section 850 of the Oklahoma Real Estate License Act (59 O.S. 1971, § 831 et seq.), and suspended Lee's real estate broker's license for a period of four months. From this decision an appeal was lodged in the District Court and that Court affirmed the Commission's decision. Thereafter, Lee appealed to this Court.

The record discloses that in the latter part of 1968 the Greens, who lived in Tulsa, contacted Lee, who lived in Beggs, and sought to purchase some property but none was suitable. The Greens informed Lee they would receive a substantial sum of money before long and they wanted to purchase land with it. On January 15, 1969, Seller gave Lee exclusive listing for three months on her 160 acre tract at a price of $200.00 per acre. Lee advertised the 160 acres in a Tulsa paper at $200.00 per acre and on February 15th the Greens looked at the land with Lee. The Greens did not desire 160 acres and Lee tried to sell them the west 80 acres at $225.00 per acre but would not price nor sell them the east 80 acres. They were not interested in the west 80 acres and no sale was consummated. On April 7th Lee prepared a contract to purchase the 160 acres with Thompson and Hamilton shown as purchasers. Thompson and Seller signed this contract but Hamilton refused to sign. On or about April 14th Lee advised Seller that since Hamilton refused to sign he would buy the east 80 acres for $200.00 per acre and Thompson would buy the west 80 acres at the

same price. Lee verbally informed Thompson he would buy the east 80 acres himself and Thompson could have the west 80 acres. Lee did not substitute his name in the contract to purchase in place of Hamilton nor did Lee ever obligate himself in writing to purchase this 80 acres. Only Thompson appeared on the contract as purchaser of the full 160 acres. Shortly thereafter Lee contacted the Greens and informed them he owned the east 80 acres and on April 30th he executed a contract of sale with them on this land at $250.00 per acre. On May 17th Lee closed the sale of Seller's 160 acres to Thompson and himself, collected his commission on the entire 160 acres and acquired his deed to the east 80 acres from Seller dated May 20, 1969. Sometime after the sale of Seller's property to Thompson and Lee, Seller discovered that prior to its consummation, Lee had entered into a contract of sale with the Greens to sell the Greens the east 80 acres for $250.00 per acre. Lee conveyed the east 80 acres to the Greens in May, 1970.

In one of its Findings of Fact the Commission found:

"W. E. Lee, Jr. never attempted to get Maxine Green (Seller) to sell 80 acres for $200.00 per acre. Nor did he offer to Junior and Virginia Green (Greens) the opportunity to buy 80 acres for $200.00 an acre along with Maton L. Thompson. Knowing of Junior and Virginia Green's interest in purchasing 80 acres, Mr. Lee purchased the 80 acres for $200.00 and turned right around and sold it to Junior and Virginia Green at $250.00 per acre and at the same time recouped all of his out of pocket expenses. In summary Mr. Lee made a full commission for selling the 80 acres, plus $50.00 per acre profit. At no time was he bound by written agreement to purchase the property."

Lee first contends he was denied due process and cites Dodds v. Ward, Okl., 418 P.2d 629 wherein we said: "By due process of law is meant an orderly proceeding adapted to the nature of the case, before

tribunal having jurisdiction, which proceeds upon notice, with opportunity to be heard, with full power to grant relief." Lee argues he received inadequate and insufficient notice, which is directed at the September 18th hearing. The basis of this argument is that at the September 18th hearing, which was an investigative hearing, it was discovered Lee had not received an exhibit attached to one complaint, which recited certain dates and conduct of Lee, such as that related above. Lee argues that § 851 of the Act, supra, plus the Commission's rules, provide the broker shall receive a bill of particulars stating the facts which constitute the alleged violation at least ten days before the date of hearing; and that the omission of this exhibit constitutes inadequate and insufficient notice.

Lee admitted he received copies of the complaints, which reflected the particular portion of the statute he allegedly violated and that he was notified of the time and place of the hearing. More than ten days prior to the hearing before the Commission, Lee received a copy of the particular exhibit in question, a copy of the transcript of testimony from the September 18th hearing and notice of the time and place of the hearing before the Commission. Lee made no objections regarding notice at the hearing before the Commission.

■ Since Lee received the exhibit in question plus a transcript of the testimony taken at the September 18th hearing, which disclosed certain dates and Lee's alleged objectionable conduct, plus notice of the time and place of the hearing before the Commission, we conclude Lee was not denied due process of law.

■ Lee next argues the hearing on November 5th before the Commission was not full and complete. Lee asserts that some of the witnesses that testified at the September 18th hearing did not appear at the November 5th hearing; and that the Commission with its subpoena powers did not bring in these witnesses and their absence made the hearing incomplete and in-

adequate. Lee does not state how or if the absence of these witnesses prejudiced or prevented him from adequately presenting his defense to the complaints. The record of the November 5th hearing fails to disclose any objection by Lee regarding the absence of these witnesses. The record does disclose that the transcript of testimony taken at the September 18th hearing, which included the testimony of these absent witnesses, was made a part of the record at the November 5th hearing and was available to the Commission. We also note that in addition to the Commission's subpoena powers any party to such hearing shall have the right to the attendance of witnesses in his behalf upon designating the persons sought to be subpoenaed. See § 851 of the Act, supra. If Lee desired the presence of these particular witnesses he merely had to exercise the right granted him above. This contention may not be sustained.

Lee filed in the district court a motion for oral argument and to "take additional testimony as may be necessary to show irregularities in the proceedings before * * *" the Commission.

The record does not reflect that oral argument was granted or that additional testimony was taken by the district court. Lee argues this constitutes error.

Sec. 321 of the Administrative Procedures Act [75 O.S.1971, § 301, et seq.] provides that on appeal to the district court that:

> "The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, not shown in the record, testimony thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs."

12 O.S.1971, § 78, provides that the court in every stage of action must disregard any error in the proceedings which does not affect the substantial rights of the adverse party; and no judgments shall be

reversed or affected by reason of such error.

Exhaustive briefs were submitted to the district court. Lee does not show in what manner his rights were prejudiced by not being granted oral argument or what testimony he would have introduced that was not contained in the record that could have shown irregularities in the proceedings.

Lee argues due process guarantees an impartial tribunal. In support of this argument reference is made to an alleged investigation of Lee after the November 5th hearing that allegedly pertained to a transaction thirteen years ago. All of this matter is outside of the record and if we were to consider this we would be compelled to project ourselves into pure speculation and this we decline to do.

■ Lee argues the procedure before the Commission was irregular. It is first urged that § 310 of the Administrative Procedures Act, supra, provides agencies shall give effect to the rules of privilege recognized by law in respect to self-incrimination. Lee argues he was questioned without any admonition or warning by the Commission that he had a right to refuse to testify and whatever he said could be used against him.

There is no indication in the record Lee claimed a privilege against self-incrimination but does reflect he voluntarily testified and he was represented by counsel at every stage of the proceeding. In the case of Re Unauthorized Practice of Law, 175 Ohio St. 149, 192 N.E.2d 54, 2 A.L.R.3d 712, the court said that a party who does not claim his constitutional privilege against self-incrimination when called as a witness upon cross-examination pursuant to law but voluntarily testifies, although objecting on other grounds, waives his privilege. We feel this argument comes too late and is without merit.

Several extracts of Lee's testimony were cited in his brief and he argues he was not able to answer questions put to him because of interruptions by the questioner. It appears that on many of the cited references it was Lee himself who started his answer before the question was completed. Lee was represented by counsel and the record does not reflect he interposed any objections on this ground. If counsel felt his client was not being permitted to fully answer the questions he should have submitted his objection. In the alternative, counsel could have given Lee the opportunity to enlarge upon his answers under cross-examination if he felt the need to do so. We fail to find any error as urged.

■ Lee argues there was no real party in interest and cites 12 O.S.1971, § 221, which provides every action must be prosecuted in the name of the real party in interest. This argument is premised on the fact Seller's father was one of the complainants and he had no interest in the land in question. We note in passing that the other three complainants were the Greens and Seller. This contention may not be sustained for the reason that the other three complainants were the Greens and Seller and they had an interest in the transaction. Furthermore, Lee made no objections to the complainants until on appeal to the district court.

Lee contends that the decision of the Commission, which was affirmed by the District Court, was arbitrary, unreasonable, erroneous and not based on evidence appearing of record and contrary to law.

■ Lee takes the position that his agency relationship with Seller terminated on April 7th when the 160 acre purchase contract was executed, or on April 15th, the expiration date of the listing agreement. Lee contends he was not the Seller agent on April 30th when he and Greens executed the sales contract on the east 80 acres or when he closed the sale of the 160 acre tract on May 17th.

In Wilcox v. Reynolds, 169 Okl. 153, 36 P.2d 488, we held:

"The law requires perfect good faith on the part of an agent towards his principal, not only in form, but in substance; and the obligation of an agent to his

principal demands the strictest integrity, good faith, and most faithful service.

"Where an agent undertakes to sustain dealings with his own principal, it must appear that the agent gave his principal full information concerning his relation to the contract and the material circumstances. * * * ."

In Clark v. Pratt, 93 Okl. 250, 220 P. 903, we held:

"A real estate broker who contracts to sell or lease the lands of another must be loyal and faithful to the interest of such other person in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it, or avail himself of any advantage that his position may give him to profit beyond the agreed compensation for his services. He may not speculate for his gain in the subject-matter of the employment."

We must conclude that Lee retained his position as agent of Seller until his labors were completed in closing the transaction between Seller and the buyers, Thompson and himself, and that during the time preceding the termination of agency, Lee was still bound to fully disclose to Seller any opportunities available to her to sell her land at a more favorable price. Failing to do this we are compelled to the view that Lee breached his fiduciary relationship with Seller as her agent by failing to act in good faith and make full disclosure of an impending sale to others at a profit to himself.

As to Lee's further contention that his agency expired by the terms of the written real estate agreement with Seller on April 15, 1969, we must disagree for the reason that Lee is placed in the incongruous position of denying agency on the one hand after April 15, 1969, and yet claiming, and in fact receiving, a real estate commission for his services from Seller as her agent on May 17, 1969. From these circumstances it would appear that the parties extended the terms of the real estate agree-ment beyond April 15, 1969 by mutual agreement.

We find no error in the trial court's affirmance of the order of the Commission.

Judgment affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and BERRY, HODGES, LAVENDER, SIMMS and DOOLIN, JJ., concur.