STATE ex rel. SHEEL v. INGRAM et al.

No. 20481.   Opinion Filed June 6, 1933.

Rehearing Denied July 12, 1933.

H. P. White and Joseph D. Mitchell, for plaintiff in error.

Leahy, Macdonald & Files, for defendants in error Sam Ingram and R. A. Correll.

Wilson & Duncan and Leahy, Macdonald & Files, for defendant in error Harry Buzan.

Owen & Looney, Paul N. Lindsey, and J. Fred Swanson, for defendants in error United States F. & G. Company and Leander Dixon.

Hamilton, Gross & Howard, for defendant in error Citizens Trust Company.

H. C. Thurman (Byrne A. Bowman, of counsel), for defendants in error Maryland Casualty Company and Aetna Casualty & Surety Company.

OSBORN, J. This action was commenced in the district court of Osage county by the state of Oklahoma on relation of George Sheel, a citizen and taxpayer of Osage county, against Sam Ingram, Harry Buzan, R. A. Correll, Leander Dixon, the board of county commissioners of the county of Osage, Okla., composed of T. L. Lillard, Henry Adams, and Earl Gray, county commissioners, the United States Fidelity & Guaranty Company of Baltimore, Md., a corporation, the Citizens Trust Company, a corporation, of Pawhuska, Okla., the Maryland Casualty Company, a corporation, the Globe Indemnity Company, a corporation, and the Aetna Casualty & Surety Company, of Hartford, Conn., a corporation, for the recovery of the sum of $47,288.97, which plaintiff alleges were funds belonging to the county which had been misappropriated by the defendants to their own use and benefit. By virtue of sections 8590 and 8591, C. O. S. 1921, the plaintiff claims the right to recover as against all defendants, except the surety companies, double the amount of funds misappropriated, as a penalty, and seeks judgment in the total sum of $83,735.64. There are no allegations seeking to charge the county commissioners with liability, but said board is made a defendant to meet the requirements of the statute.

A demurrer filed by the board of county commissioners was overruled, and said board filed an answer alleging, in substance, that plaintiff had no authority to prosecute this action, since it, in its official capacity, had already filed suit to recover the same funds sought to be recovered by plaintiff. Thereafter plaintiff filed a reply in which he alleged that the suit filed by the board of county commissioners was not filed in good faith and that it was not prosecuting same with diligence.

Thereafter all of the defendants, except the board of county commissioners, demurred to the pleadings of plaintiff, which demurrers were sustained by the court and plaintiff's action dismissed, from which ruling plaintiff has appealed.

Plaintiff's petition, amended petition, and an amendment to the amended petition allege, in substance, that Sam Ingram, defendant, as tax ferret of Osage county, and Harry Buzan, deputy county assessor of Osage county, who was also county treasurer for a portion of the time involved herein, and R. A. Correll, as county assessor, entered into a conspiracy for the purpose of cheating and defrauding the taxpayers of Osage county. The petition sets out in full a contract entered into between Sam Ingram, tax ferret, and Harry Buzan, deputy county assessor, whereby the said Buzan was to assist Ingram in discovering property which might be ferreted on the tax rolls, and as compensation therefor, Buzan was to receive one-half of all the tax ferret fees paid to Ingram. Plaintiff charges that Correll, the county assessor, was beneficially interested in the contract, and that these three individuals entered into a conspiracy and agreement that the said Buzan and Correll were to omit various assessments of property from the tax rolls, after which Ingram would pretend to discover said property and place the same on the tax rolls, thereby receiving as tax ferret 15 per cent. of the total tax collected on said property, which would be divided with Buzan and Correll pursuant to said contract.

The plaintiff alleges that a great number of taxpayers listed their property for taxes for the various years involved and delivered said schedule of property to the tax assessor but instead of placing property on the tax rolls, the assessor delivered the schedules to Sam Ingram, who pretended to discover the property and, as tax ferret, placed the same on the tax rolls, thereby defrauding the county of 15 per cent. of the money received in payment of such taxes, which funds were divided between the three defendants above named. In other words, the plaintiff has charged the three defendants with malfeasance in office and a course of conduct of the most reprehensible nature. The several surety companies named as defendants herein are sureties on the official bonds of the various defendants. The pleadings are volum-

inous and involve 64 transactions, which are set forth in 64 separate counts. The petition also alleges that a notice and demand was served upon the board more than 25 days before the filing of the petition in this cause. but there is no allegation of failure to institute said action.

Demurrers were sustained by the court for various assigned reasons: (1) That the petition and amended petition and amendment to amended petition do not state facts sufficient to constitute a cause of action against any of the defendants; (2) that all of the various causes of action, except certain specified causes of action, are barred by the statute of limitations; (3) that plaintiff is without legal capacity to maintain this action; (4) that several causes of action are improperly joined in one action.

This action is based upon sections 8590 and 8591, C. O. S. 1921 [5964 and 5965, O. S. 1931], which provide as follows:

"Section 8590. Every officer of any county, township, city, town, or school district. who shall order ·or direct the payment of any money or transfer of any property belonging to such county, township, city, town or school district in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for any such county, township, city, town or school district by any officer thereof, and every person having notice of the facts with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid or such transfer of property shall be made, shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the county, township, city, town or school district affected, for double the amount of all such sums of money so paid. and double the value of property so transferred, as a penalty to be recovered at suit of the proper officers of such county, township, city, town or school district, or of any resident taxpayer thereof, as hereinafter provided.

"Section 8591. Upon the refusal, failure or neglect of the proper officers of any county, township, city, town or school district, after written demand made upon them by ten resident taxpayers, of such county, township, city, town or school district to institute or diligently prosecute proper proceedings at law or in equity for the recovery of any money or property belonging to such county, township, city, town or school district, paid out or transferred by any officer thereof in pursuance of any unauthorized, unlawful, fraudulent or void contract, made, or attempted to be made, by any of its officers for any such county, township, city, town, or school district, or for the penalty provided in the preceding section, any resident taxpayer of such county, township, city, town, or school district affected by such payment or transfer, after serving the notice aforesaid and after giving security for costs, may, in the name of the state of Oklahoma, as plaintiff, institute and maintain any proper action which the proper officers of the county, township, city, town or school district might institute and maintain for the recovery of such property or for such penalty; and such municipality shall in such event be made defendant, and one-half the amount of money and one-half the value of the property recovered in any action maintained at the expense of a resident taxpayer under this section shall be paid to such resident taxpayer as a reward."

The provisions of the above quoted statutes have been before this court for construction in several cases, among them being the following: McGuire v. Skelton, 36 Okla. 500, 129 P. 739; Territory ex rel. Johnston v. Woolsey, 35 Okla. 545, 130 P. 934; Buckeye Engine Co. v. City of Cherokee, 54 Okla. 482, 153 P. 1166; State ex rel. Schilling v. Oklahoma City, 67 Okla. 18. 168 P. 227; State ex rel. Morrison v. City of Muskogee, 70 Okla. 19, 172 P. 796; National Surety Co. v. State, for Use of Board of Commissioners of Comanche County, 111 Okla. 180, 239 P. 257; National Surety Co. v. State ex rel. Richards, 111 Okla. 185, 239 P. 262; State, for Use of Board of Commissioners of Osage County, v. McCurdy, 115 Okla. 111, 241 P. 816; Dorsett v. State, 144 Okla. 33, 289 P. 298.

Practically all the questions which are urged by the plaintiff before this court had consideration in some of the above cases. But we have concluded that the interpretations given to said statutes in the above-cited cases are erroneous in some respects, and that we should not follow same.

In the early case of McGuire v. Skelton, supra, Commissioner Sharp, speaking for the court, said:

"Obviously it was the purpose of the

Legislature, as expressed in section 7413, supra, to create two classes of liability for the acts of malfeasance named in said section. The first class of actions accrued to all innocent persons in any manner injured thereby; the second to the county, township, city, town, village, or school district affected. To the first class the cause of action was for damages; to the second for a penalty in double the amount of all sums of money unlawfully expended and paid out. The first provision does not appear to place any limitation upon the amount that may be recovered as damages; the second, or penalty provision, limits the amount of recovery to double the amount of the money wrongfully paid out."

In Territory ex rel. Johnston v. Woolsey, supra, this court, by Chief Justice Hayes, said:

"Although it appears that they have attempted, by thus dividing up their two amended petitions, to state two causes of action, the petition as a whole states in fact but one cause of action, which is the right to recover the penalty imposed by the statute in double the amount of the money misappropriated. The second section of the statute, supra, creates two liabilities and authorizes two actions: First, an action by any innocent person for any damages he may have sustained by reason of the unlawful act of the officers misappropriating or unlawfully transferring the property; and, second, an action by the city or by the resident taxpayer for double the amount of any money misappropriated or the value of any property illegally transferred as a penalty. Section 3 prescribes the procedure that must be taken by the taxpayers in the prosecution of an action by them when they have not sustained any damages by the unlawful acts of the delinquent officer or officers. Under the procedure prescribed, the right of action to a taxpayer does not accrue, unless the officers of the city whose duty it is to prosecute the action for the city refuse to do so after demand by ten resident taxpayers of the city. In the event such officer or officers refuse to institute or diligently prosecute such an action 'for the recovery of any money or property belonging to such city * * * or for the penalty provided in section 2, * * *' then the resident taxpayers may institute and maintain an action 'for the recovery of such property or for such penalty' one-half of the money or one-half of the value of the property recovered in the action maintained by the taxpayer goes to the taxpayer as a reward for his services, and the other half to the city.

"It will be observed that the demand is to be made upon the proper officers of the city to bring action 'for any money or property belonging to the city'; but the authority of the taxpayer to bring suit is to bring an action for the recovery of such property or for said penalty. The legislative purpose of these provisions undoubtedly was to provide a sure means for the city to recover property or money unlawfully expended or transferred by its officers at as little loss to the city as possible. Hence it was provided that, where property had been transferred, the taxpayer may bring suit to recover the identical property transferred. This is important, for in many instances a personal judgment for double the value of the property might be worthless; and, by refusal of the proper officers to prosecute the action, authority to the taxpayer to prosecute the action for a money judgment only would afford the city no relief. On the other hand, where the action is to be prosecuted by the taxpayer for a money judgment as for the value of the property, or for the amount of money misappropriated, such action must result in loss to the city, in that one-half of the amount recovered goes to the informer as his reward. Hence the authority to the taxpayer is to prosecute an action not for the money misappropriated, but for the penalty provided by section 2, which is double the amount misappropriated or double the value of the property transferred; and, although one-half of the recovery is paid to the taxpayer who has borne the expense of the litigation, the municipality is wholly restored in its loss.

"We are of the opinion that the only action authorized to be prosecuted by a taxpayer or taxpayers in the name of the state is for a recovery of the identical property unlawfully transferred, or for double the value thereof; or, where money has been misappropriated, for double the sum misappropriated, as the penalty named in section 2 of the act. The facts stated in plaintiff's petition state a cause of action for recovery of the penalty in double the sum misappropriated, and the petition should be so treated."

In State ex rel. Schilling v. Oklahoma City, supra, this court, speaking through Justice Hardy, said:

"The petition is drawn upon the theory

that the action was for a statutory penalty, and that the sureties upon the bond of the respective city commissioners were liable therefor to the extent of the penalty stated in the bonds. The facts alleged stated a cause of action against the defendants, Shellenbarger and the defendants comprising the board of city commissioners which, under the statute, may be prosecuted against them jointly or severally, and as to these defendants the petition stated a cause of action, and the demurrer of defendants should have been overruled. As to the sureties on the respective bonds of the defendants comprising the board of city commissioners, a different situation is presented. There is no provision in the statute which makes the bonds of the commissioners liable for such penalty. The obligation of the sureties upon the official bond of the commissioners is that the sureties will answer any damage that may result from a breach of the bond. It is not that the principal will respond to such fines and penalties for official misconduct as may be prescribed by law. Fines and penalties are imposed by way of punishment, and are sometimes incurred irrespective of actual damage or loss suffered by any one. Thus officers may be fined or have judgment rendered against them for penalties in a case where only nominal damages could be recovered on his official bond. * * *

"The petition did not state facts sufficient to constitute a cause of action against the respective sureties on the bonds of the defendants comprising the board of city commissioners, and the demurrer of said defendants should have been sustained.

"If it be contended that the petition intended to state a cause of action against defendant Shellenbarger and the city commissioners for the penalty and against the respective sureties on the bonds of the city commissioners for a liability within the terms of their bonds, then there is clearly a misjoinder of causes of action, and it would have been proper to sustain the demurrer upon that ground."

The other cases, without analyzing them in detail, follow the strict, and erroneous construction, as we think, given to said statutes in the above cases.

But we are not willing, notwithstanding the lapse of time, to follow a construction of said statutes which we believe to be erroneous, and which has the direful result of denuding the rights of the taxpayers under said statute, and to make ineffective litigation authorized by the public policy of the state and encouraged even to the extent of rewarding the interested taxpayer carrying on said litigation with large pecuniary benefits resulting therefrom. The situation disclosed by the record in this case, as set forth by the allegations of the petition, were sought to be remedied by the law-making body, and while we agree with the authorities above quoted in the principle that said statutes must be strictly construed, yet we cannot believe that the same should be given such strict construction that their field of operation is so abridged that they have virtually become useless provisions of the law.

We do not think that full effect has been given to the various words and clauses contained in said statutes. Section 8590 provides that "every officer of a county * * * who shall order or direct the payment of any money or transfer of any property belonging to such county * * * in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful, or fraudulent contract * * * and every person having notice of the facts * * * to whom or for whose benefit such money shall be paid or such transfer of property shall be made * * * **shall be furthermore jointly and severally liable to the county,** * * * for double the amount of all such sums of money so paid and double the value of the property so transferred, as a penalty, to be recovered at the suit of the proper officers of such county * * * or of any resident taxpayer thereof as hereinafter provided."

Section 8591 provides that: "Upon the refusal * * * of the proper officers of any county * * * to institute and diligently prosecute **proper proceedings at law or in equity for the recovery of any money or property belonging to such county** * * * or for the penalty provided in the preceding section, any resident taxpayer of such county * * * may, in the name of the state of Oklahoma, as plaintiff, **institute and maintain any proper action which the proper officers of the county * * * might institute and maintain for the recovery of such property, or for said penalty;** and such municipality shall in such event be made defendant and one-half the amount of money and one-half the value of the property recovered in any action maintained at the expense of a resident taxpayer under this sec-

tion, shall be paid to such taxpayer as a reward."

We think it is clear under these statute that the informing taxpayer should be vested with all of the rights with which the proper officers of the municipality were vested. The proper officers were vested with authority (a) to recover the proper, or money, (b) the penalty, and to that end they were authorized to institute legal or equitable actions in pursuance of their claimed rights to enforce the "joint and several liability to the county" for the "money or property belonging to such county," or "for the penalty provided for in the preceding section."

The officers intrusted with the custody of the public funds were under the duty of refraining from disbursing said funds under contracts known by them to be unauthorized, unlawful, or fraudulent, and their failure to observe this duty constituted a breach of their bonds of office. It is clear, therefore, that not only under su circumstances were they liable for the property so transferred, or the money so misappropriated, but that the sureties on their official bonds were likewise liable. To that extent the statute is not penal in its nature. To that extent the informing taxpayer, under the provisions of said statutes, had a right to pursue all of those officials who had betrayed their public trust, and also to pursue their bondsmen who had placed themselves as surety of the good faith of such officers, who had indemnified the county, by their official bonds, against their bad faith. The prior opinions do not give effect to that provision in the statute which gives to the taxpayer the right to "institute and maintain any proper action which the proper officers of the county might institute and maintain for the recovery of said money, or for said penalty." The granting of this privilege was one of the primary purposes of the legislative enactments.

As an incentive to the careless taxpayer, who ordinarily is indifferent to the fiscal acts of the municipality in which he lives, the law-making body added a penalty equal to the value of the property unlawfully transferred, or the money misappropriated, and in addition to giving said taxpayer a right to recover the property or money for the public use, it gave to him the right to recover said penalty, which upon collection, would be "paid to such resident taxpayer as a reward." To this extent the

statute provides a penalty, and this being beyond the terms of the bond and the obligation of the sureties thereunder, said sureties are not liable. But this cannot exempt them from liability under the statute to the extent hereinabove set forth.

The construction placed upon said statutes herein has been suggested, but not fully embraced, by this court in its action in the case of National Surety Co. v. State, for the Use of Board of Commissioners v. Comanche County, supra. In that case the county treasurer failed to account for bonds in his possession as such officer. An action was filed against him and his surety to recover the value of the bonds unaccounted for and the additional liability created by the above statutes. The right to recover double the value of the bonds was abandoned by striking same out of the petition. This court, in passing upon the contention of the sureties that said action was for a penalty, said:

"The Attorney General presents the cause as a suit to recover the value of certain bonds, which were purchased with sinking funds belonging to Comanche county, and which the treasurer wrongfully and without lawful authority disposed of and failed to account for. He does not seek to enforce a forfeiture or penalty, but is seeking to recover the value of certain of the county's property which came into the hands of the treasurer and which he converted and was unable to produce; and his failure to produce such property constituted a breach of official duty, and of a condition of his surety bond, which provides that the treasurer 'shall faithfully and truly perform all the duties of his office and shall pay over and account for all funds coming into his hands by virtue of his said office as county treasurer,' etc. The treasurer by virtue of his office, had in his custody and control the sinking fund of his county. By reason of a statute he was authorized to purchase certain securities, including the Liberty Bonds, which he had purchased, and which he had in his custody and control, and he became bound to perform his official duty by accounting for and turning over to his successor the securities which, under statutory authority, he had purchased with portions of the sinking funds, and his failure constituted a breach of official duty and of his surety bond. The failure to account for the securities purchased by the treasurer is the matter alleged, and the action against him and his surety is not for the value of said securities. The action, there-

fore, is not a suit to recover a penalty or forfeiture, but is a suit to recover the value of certain of the county's property which the treasurer had failed to account for. The security given by the treasurer was in compliance with the provisions of section 5930, Comp. Stats. 1921, which not only requires that a bond should be given, but provides that action upon such bonds 'may be brought thereon in the name of the state for the use and benefit of the person or persons injured by a violation thereof.'

"The injury here alleged is to the county commissioners of Comanche county in their official capacity, and the injury is the failure of the county treasurer to account, as the law requires, for the securities purchased by him out of the county's sinking fund under statutory authority. The petition has the effect of alleging a breach of official duty of the county treasurer and a breach of his official bond, and is properly brought in the name of the state for the use and benefit of the county commissioners of Comanche county."

See, also, National Surety Company v. State ex rel. Richards, supra; State, for the Use of Board of County Commissioners of Osage County, v. McCurdy, supra. In the latter case this court said:

"In this case we think the plaintiff was mistaken as to the relief which the allegations of the various causes of action would entitle it to, in so far as the relief prayed is double the value of the securities converted and unaccounted for. The relief to which the plaintiff is entitled under the allegations of the various causes of action is not double the value of the securities disposed of, but is the face value of such securities, with accrued interest."

We therefore hold that to the extent of the liability of the officers for the value of the property unlawfully transferred, or the money misappropriated, the action provided for under the above sections is not a penalty, and the sureties, as well as said officers, are liable, not exceeding, however, the amount of their respective bonds. As to the additional liability for an equal amount, we hold that the same constitutes a penalty, and while the officers, and each of them, jointly and severally are liable, the respective sureties on their official bonds have no liability therefor.

To the extent that the expressions of this court in the above cases are in conflict herewith the same are expressly disapproved.

It is clear that the various causes of action are not barred by the statute of limitations. All the payments so made were within three years from the filing of this action, and the action was filed by plaintiff within 25 days from the service of notice. State ex rel. Schilling v. Oklahoma City, supra; National Surety Company v. State, 111 Okla. 180, 239 P. 257; State, for the Use of Board of Commissioners of Osage County v. McCurdy, 115 Okla. 111, 241 P. 816; Abernathy v. State ex rel. Goar, 31 Fed. (2d) 547; Id., 280 U. S. 599, 50 S. Ct. 81.

It is contended that there is a misjoinder of causes of action in that 64 separate causes of action, some of which do not affect some of the defendants, are joined in one petition, although separately stated and numbered. Section 266, C. O. S. 1921 [O. S. 1931, sec. 199], provides:

"The plaintiff may unite several causes of action in the same petition, whether they be such as have heretofore been denominated legal or equitable, or both, where they all arise out of any of the following classes:

"First; the same transaction, or transactions connected with the same subject of action. * * *

"But the causes of actions so united must all belong to one of these classes, and must affect all the parties to the action except in actions to enforce mortgages or other liens."

The gravamen of the various causes of action is a fraudulent conspiracy entered into between Sam Ingram, Harry Buzan, and R. A. Correll predicated upon a contract between the board of county commissioners and Sam Ingram as tax ferret, and another contract between Sam Ingram and Harry Buzan relating to a division of the fees arising under said tax ferret contract, it being alleged that R. A. Correll is beneficially interested in said contract, and that Buzan took said contract for himself individually and as trustee for Correll, and that there was a conspiracy between the three named parties to commit fraud upon Osage county and to receive fraudulently various sums of the public money, which in fact were received under the terms of said tax ferret contract, but as a result of said fraud and conspiracy. The several causes of action are predicated upon the various disbursements of said public money under said contract. We are therefore of the opinion that the several causes of action arose out of "the same transaction, or transactions connected

with the same subject of action." The express terms of the statutes permit such joinder under such circumstances. Stone v. Case, 34 Okla. 5, 124 P. 960.

The surety companies on the various official bonds point out that some of said transactions took place when they, or some of them, were not on the official bonds of said officers, and that such causes of action do not "affect all the parties to the action," as provided by section 266, supra. It must be borne in mind, however, that the sureties on the official bonds of the various parties are liable only by reason of their contracts to indemnify against the malfeasance of their respective principals, and that their liability is limited not only to the amount of their respective bonds, but also to the amount misappropriated or fraudulently obtained by their principals and his confederates. The liability of their principals is joint and several under the express terms of the statutes above quoted. By their contact they are in privity with their various principals, and we therefore hold that the various causes of action affect them in such manner as to permit the joinder of said causes of action. People's Bank & Trust Co. v. Nelson, 27 Okla. 500, 132 P. 493; Abraham v. Harry, 65 Okla. 253, 165 P. 1154; Ferguson v. Renfrow, 112 Okla. 140, 232 P. 847.

The court sustained the various demurrers also upon the ground that there was a misjoinder of causes of action. In this the trial court was in error. It is not necessary, therefore, to notice the further contentions of the parties as to alleged error of the court in refusing to permit said various causes to be docketed under the provisions of section 271, C. O. S. 1921 [O. S. 1931, sec. 204].

It is finally contended that no causes of action are stated by the petition for the reason that the notice served by the taxpayers prior to the institution of the suit is indefinite, uncertain, and not sufficiently specific in detail to require the proper officers to file suit to recover said funds, and that while it is alleged in the petition that said notice was given, there is no allegation that the board of county commissioners refused, failed, or neglected, under the provisions of section 8591. C. O. S. 1921 [O. S. 1931, sec. 5965], to institute an action as demanded, and that plaintiff therefore has no capacity to sue.

The board of county commissioners filed a demurrer to the petition of plaintiff. which demurrer was overruled, and it filed an answer which discloses that on November 3, 1927, the board of county commissioners commenced an action in the same court against the said Sam Ingram, Harry Buzan, and R. A. Correll to recover the amounts sought to be recovered in this action, and further alleging that the notice or demand given by the taxpayer was not given "in the manner and form required by law to commence and prosecute said action for the recovery of said money." To this answer the plaintiff filed a reply alleging that, if said action had been instituted, the same was not filed in good faith and had not been diligently prosecuted, in that no steps had been taken to cause the issue to be joined therein.

While undoubtedly the notice required by said statute is one of the necessary steps to be taken by the taxpayer before he is authorized to prevail in an action of this kind, yet, under the terms of the statute, it is clear that the notice relates to the remedy and not to the right. No notice is necessary to be given to the persons on whom the liability may be cast. The notice required is to be given to the proper officer to institute the action. The cause of action already exists, and if the proper public officers institute the same, there is no necessity for the giving of notice. Before a taxpayer can institute said action, the statute requires that he give notice to the proper public officers, and demand the institution of said suit. Upon the giving of said notice the statute provides that the right of the taxpayer to institute said action shall inure to him upon the failure, neglect, or refusal of the proper officers to "institute and diligently prosecute" said action upon demand. It is the fact of giving notice and the fact of failure of the proper officers to institute, or if instituted, to diligently prosecute, the same, and not the mere allegation of the giving of said notice, or of the failure to institute or diligently prosecute, t h a t clothes the taxpayer with the right to maintain said action. The sole purpose of said notice was to call the attention of the public officers to an official dereliction on their part in failing to safeguard the public funds.

In the case of Gatzow v. Buening (Wis.) 81 N.W. 1003, it is said:

"Rev. St. sec. 4222, subd. 5, providing that no action for an injury to the person shall be maintained unless, within a year

after the happening of the event causing the damages, written notice is served on the person claimed to have caused the damage, is a limitation on the remedy to enforce a right, not a condition of the right, and the limitation is waived by failure to take advantage of it other than by an objection to the evidence on the trial."

In the case of Maurer v. Northwestern Iron Company (Wis.) 138 N. W. 636, it is said:

"Where St. 1898, section 4222, requiring notice of injury to be served in the manner required for the service of summons in courts of record, is treated as a statute of limitations, the defense of a failure to give such notice should be raised by answer or special demurrer where the fact appears upon the face of the complaint or by answer where it does not."

Under certain circumstances, that is, where the public officers who are authorized to maintain the suit and by reason of their own culpability, are liable under the terms of the statute, it appears that no notice, under the holdings of the courts of some. states, is necessary, on the theory that the law does not require a useless thing.

In Burns v. City of Nashville (Tenn.) 221 S. W. 828, it is said:

"In cases where the suit would be antagonistic to the interest of the officers of the corporation, or the circumstances such that it cannot be brought and directed by such officers without serious embarrassment to them, they are improper parties to bring the suit, and no demand on them is necessary. State v. Mitchell, 104 Tenn. 337, 58 S. W. 265; Slavin v. McGuire, Ann. Cas. 1913C. 912; Mock v. Santa Rosa, 126 Cal. 330, 58 P. 826; Lodor v. McGovern, 48 N. J. Eq. 275, 22 Atl. 199, 27 Am. St. Rep. 446; McQuillin on Municipal Corporations, vol. 5, sec. 2601."

As to whether or not the proper officers had diligently prosecuted an action so instituted after demand would be an issuable fact for determination upon trial. It would be necessary for the plaintiff to prove that the officers instituting said suit had failed to prosecute with diligence before he would be entitled to recover in his action. This would be defensive in its nature. We can see no reason for holding otherwise as to the giving of notice or the failure to institute said action. The board of county commissioners alleged the filing of suit; the plaintiff taxpayer alleged want of diligence in prosecution thereof. Prosecution by the proper officers with diligence is necessarily

defensive, and we can see no good reason for holding otherwise as to the institution of said suit.

As to the defendants, other than the public officers on whom the notice was served and whose duty it was to institute and diligently prosecute the action arising under said statutes, it appears that the language used in the case of Burns v. Essling (Minn.) 191 N. W. 899, is applicable:

"Under all the circumstances, it would be expecting too much of human nature to suppose that these officers would prosecute the action vigorously or earnestly. It is inconceivable that there would be anything but a half-hearted prosecution. But if the defendants have been convinced that such an action should be brought, there is nothing to prevent them from bringing it now. If it is true that money has been illegally appropriated, the defendants, or those who received it, may return it to the city and have a perfect defense."

As it was said in the case of State ex rel. Schilling v. Oklahoma City, supra:

"The statute gives the right upon the refusal, failure or neglect of the proper officers after written demand by ten taxpayers to institute or diligently prosecute such proceedings, and though a proceeding be instituted, if the officers bringing same abandon or neglect to diligently prosecute it, then the right accrues to the resident taxpayer upon complying with the conditions in section 6778. Some of these contingencies upon which the taxpayer's right of action depends might happen after the expiration of 12 months from the time the cause of action accrued to the city, and upon the happening of such contingencies an action might be commenced upon the relation of a taxpayer, otherwise the statute would be of no avail; for officers desiring to prevent such litigation and to avoid liability for their wrongful acts, could institute suit upon demand being made, and after the expiration of one year, dismiss or abandon same, thus leaving the taxpayer without a remdey."

In the case of State ex rel. Morrison v. City of Muskogee, 70 Okla. 19, 172 P. 796, it is said:

"When a city refuses, fails, or neglects to bring suit when money has been unlawfully paid out or property unlawfully transferred by city officials, after written demand by ten or more resident taxpayers that such suit be brought, and thereafter an action is begun by a resident taxpayer to recover the penalty prescribed by sections 6777 and 6778. R. L. 1910, the resident taxpayer bringing the suit has a substantial interest in the cause of action

which is not affected by a suit subsequently brought by the city."

As to the insufficiency of the notice, it does not appear that the board of county commissioners was in any wise misled, for said board, according to the allegations of its answer, within three days after the filing of this suit, filed a similar suit in the same court. There is no claim in the answer of said board that the notice did not give it sufficient information, but the allegation in their answer was simply a conclusion of law that same was not given in the manner and form required by law, which presented no issuable fact. International Harvester Co. v. Cameron, 25 Okla. 256, 105 P. 189. It is noted that the demand requested that suit be brought against said three persons to recover "the sum of $47,277.90, wrongfully and unlawfully paid to the said Sam Ingram by the said Harry Buzan, county treasurer, on account of false and fraudulent claims for tax ferret fees." It is not disclosed in what manner any one has been injured or misled by the insufficiency of the notice. We are of the opinion that a substantial compliance with the statutes is all that is required, and that the notice served in this case is sufficient to meet the demands of the statute.

We therefore conclude that the petition was sufficient in its allegations in all of the various causes of action to state a cause of action, and that the trial court erred in sustaining the various demurrers on this ground.

The judgment of the trial court is reversed and the cause remanded, with directions to overrule the various demurrers, and to proceed in conformity with the views herein expressed.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS, McNEILL, BAYLESS, and BUSBY, JJ., concur. SWINDALL, J., concurs in part, dissents in part. WELCH, J., dissents.

SWINDALL, J. (concurring in part and dissenting in part). I agree with the rule of law announced in the majority opinion that after written demand upon the proper officers and refusal, failure or neglect of said officers to institute or diligently prosecute proper proceedings at law or in equity, a resident taxpayer can maintain, under section 8591 C. O. S. 1921 [O. S. 1931, sec. 5965], every action which the proper officers could maintain to recover any property un-

lawfully transferred or any money misappropriated or for the penalty provided for by said section and section 8590; but I dissent from that portion of the opinion overruling in part former decisions of this court and from the holding that it is proper for a resident taxpayer to join an action against such officers and the sureties on their official bond based upon the failure of such officers to honestly and faithfully discharge their official duties in accordance with the terms and conditions of such bonds with an action to recover the penalty provided for in said section, for the reason that the causes of action so united do not all belong to one of the classes designated in section 266, C. O. S. 1921 [O. S. 1931, sec. 199], and do not affect all the parties to the action. The action to recover for breach of official duty affects the respective officers and the sureties on their official bonds, but the action for a penalty does not affect the sureties.

I am of the further opinion that as to the action against the officers and their sureties for the failure of said officers to faithfully discharge their official duties it is governed by the five-year statute of limitations, and not by the special statute of limitations relative to an action for penalty prescribed by section 8591.

I concur in the conclusion that the petition was sufficient in its allegations to state a cause of action against the county officers named and their sureties.