## DESKINS et al. v. FIDELITY NAT. BANK OF OKLAHOMA CITY.

No. 28065.  May 31, 1938.

Rehearing Denied June 14, 1938.

Sigler and Jackson, for plaintiff in error Deskins.

Champion, Champion & Fischl. for plaintiffs in error Dillon, Wolfe, and Croskell.

Earl Q. Gray, Paul G. Darrough, and Bland West, for defendants in error.

BAYLESS, V. C. J. H. H. Deskins, the holder of an unsatisfied judgment against H. H. Croskell, deceased, and Minnie Dillon, Ethel Wolfe, and H. S. Croskell, Jr., claiming to own the property involved, appeal from the judgment of the district court of Carter county, establishing a superior equitable lien upon the real estate in favor of the Fidelity National Bank of Oklahoma City.

The action was one in equity at the time of the trial, and the judgment of the trial court must be affirmed unless we determine that it clearly is against the weight of the evidence. Mitchell v. Leonard, 55 Okla. 626, 155 P. 696, and 2 Okla. Dig. (West) p. 579. Appeal and Error, Key No. 1009 Therefore, we will make a summary statement of the facts.

H. H. Croskell owned 970 acres of land which was mortgaged to the American Bank & Trust Company of Ardmore for about $8,000. He was running a herd of cattle on this land, and the cattle were mortgaged to the Fidelity National Bank for approximately $20,000. He was indebted to others, including a judgment of record, a statutory lien upon his real estate, held by Deskins as assignee. The American Bank instituted an action to foreclose its mortgage and various lien claimants, including the judgment lien of Deskins, were made parties. Judgment establishing the bank's lien and directing foreclosure sale, at which time all liens, including Deskins', would be wiped out. Before the sale an effort was made to force the American Bank to marshal assets, but the motion to this effect was denied. The American Bank tried to interest various parties in the property, including all those whose relations with Croskell might incline them to the purchase of the land. Finally, the Fidelity Bank became interested. Its interest was largely dictated by the necessity for keeping the land as a pasture for the cattle upon which it had a lien. It had then, or later developed, another interest which gives rise to the point of controversy and which will be discussed later. The arrangements were that the American Bank would buy the property at the sheriff's sale, and when it had received a sheriff's deed, it would transfer the property to the Fidelity Bank in return for payment of the amount of its investment. This was duly carried out, but in a manner now to be discussed. The Fidelity Bank did not care to have the title to the property in its name. It then began a series of negotiations and correspondence with Croskell and others in an

endeavor to find some person in whose name title could be placed without danger to it or Croskell. It is fair to state at this point that the Fidelity Bank considered that it was merely the holder of a lien on the property, and that Croskell was to own the land subject to this lien. It was recognized, however, that title could not be recorded in his name without involving efforts on the part of his creditors to subject the same to their claims. It is apparent that the Fidelity Bank had at least three purposes: (1) To have and protect a lien upon the property; (2) to eventually pass the property to Croskell when he paid its lien; and (3) to protect his ownership thereof from his creditors, by concealing it, until Croskell was in a position to take title. It was agreed to place a deed of record showing title in Adolph Garner, an employee of Croskell, and to have Garner mortgage the property to the Fidelity Bank. Instruments evidencing this plan were placed of record. Eventually, the Fidelity Bank undertook to foreclose its mortgage and filed an action for that purpose. It appears that Croskell had died. Certain pleadings were filed on the part of some of the defendants, whereupon the Fidelity Bank filed an amendment to its petition in which it set out generally the facts and sought, in the event its note and mortgage were held invalid, an equitable lien. It may be said at this point that it was fairly conclusively established that Adolph Garner was an unwitting tool in this plan, that he was illiterate, and he did not execute the note and mortgage held by the Fidelity Bank. In the meantime, Garner executed a deed to the property to Dillon, Wolfe, and Croskell, children of the deceased Croskell. It is certain that the Fidelity Bank had no notice or knowledge of Garner's illiteracy nor of the fact that he would claim he did not execute the note and mortgage held by it.

The trial judge found, in effect, that the note and mortgage were forgeries, that the Fidelity Bank had advanced the money necessary to pay the American Bank, that Croskell had not advanced any of this money, and that Fidelity Bank had an equitable lien on the property superior to all other claims, and ordered the property sold to satisfy this lien.

Deskins argues three propositions:

"First: That the court erred in foreclosing a lien upon the land in question for the reason that the testimony of the plaintiff showed that the plaintiff owned the land, and therefore there could be no foreclosure of a lien so far as the plaintiff was concerned.

"Second: That the court erred in rendering a judgment for the plaintiff in this case for the reason that the testimony showed beyond question that the plaintiff had been guilty of a fraud and had participated in a fraud and attempted to and did aid H. H. Croskell in placing his property beyond the reach of his judgment creditors, and that the plaintiff, having participated in this fraud, cannot be heard in a court of equity to foreclose an equitable lien.

"Third: That the court erred in not requiring the plaintiff to marshal the assets and require the plaintiff to foreclose on his lien on the $4,000 worth of vendor lien notes mentioned, or if the plaintiff desired to foreclose its mortgage on the land, then to require the plaintiff to surrender to the defendant Deskins the $4,000 note to apply upon his judgment."

The argument of the Fidelity Bank is under two propositions:

"When the Fidelity National Bank furnished the money to purchase the land in question from the American Bank & Trust Company of Ardmore, it became the equitable owner of the land and upon conveyance by the American Bank direct to Adolph Garner acquired a vendor's or equitable lien which it was entitled to foreclose upon a default in payment of purchase price; and the transfer by Garner to the three Croskell heirs made a foreclosure necessary to protect the bank's equitable interest.

"The application of the defendant Deskins herein for a marshaling of assets was precluded not only by the facts and circumstances, but also by the former judgment on the issue rendered against his assignors, Westheimer & Daube."

The Croskell heirs have filed a separate brief in which they take generally the position urged by Deskins, and in which they urge earnestly the inequitable conduct on the part of the Fidelity Bank as a reason why a court of equity must refuse it any relief.

As to Deskins' first contention, we have this to say: If by this argument Deskins intends to assert that title to the property was actually vested in the Fidelity Bank (by reason of which it would be a useless gesture to foreclose on its own property), then Deskins has no standing whatsoever and the appeal is at an end. Deskins' judgment lien was barred as to this property by the sheriff's sale. If he is in earnest in this argument, then he has no lien on the property. owned by the Fidelity Bank, which would give him standing in this action.

We now pass to the second proposition. The trial judge seems not to have decided whether the Fidelity Bank was guilty of inequitable conduct, but rather to have taken the view that, conceding for the argument it was guilty, no harm resulted to anyone, and for this reason no cause existed to prevent the granting of equitable relief.

Recognizing for the time being the correctness of rules contended for by Deskins, and recognizing that the record before us could well support a finding of a design on the part of the Fidelity Bank to aid Croskell in concealing this property from his creditors, yet we feel that no one was injured by it. The following analysis of the status of the parties at the time of the various steps will disclose this fact.

First: The debt the American Bank had against the property admittedly was a valid debt and lien on the property. Therefore, we begin with simply an equity existing for the benefit of the other creditors—that is, the right to get what was left when the American Bank had been satisfied.

Second: While it is contended that the American Bank was privy to the design to save this property for Croskell, this is not substantiated. It is clear that it asked Westheimer & Daube, assignors of Deskins, to take over the property. In its desire to realize its money out of this land it would have dealt with anyone.

Third: It is admitted that the Fidelity Bank paid more than $8,000 to the American Bank for this property, and if it thereby acquired outright title thereto, the other lien claimants, being already barred, were not injured. If it only intended to have and hold a lien, and to permit the property to remain the property of Croskell, the parties remain in the position which they occupied before the foreclosure: The title in Croskell, the superior lien, and the remaining liens.

Fourth: If anything, this arrangement actually redounded to the benefit of the creditors. The effort at concealment failed, and they learned that property which they considered as sold and beyond their reach really belonged to Croskell, subject to the lien, and they had another opportunity to reach the same for the satisfaction of their debt. If it be urged that they could not reach it until the Fidelity Bank's lien was first satisfied or extinguished, the same may be said with respect to the circumstances before the foreclosure by the American Bank.

Fifth: To sum it up finally is virtually to repeat what was said in the first point made. Croskell owned the property subject to a mortgage lien, and his other creditors were entitled to what was left, if anything. We are unable to see that the situation has changed in any respect, or to the detriment of anyone involved. Until the bank's lien was actually paid by Croskell, the inferior lien claimants' status remained inferior.

The rule which the trial court applied, and which we think applicable, is:

"Fraud without damage or injury is not remediable. This principle applies not only to fraud arising through misrepresentation, but also to fraud arising through concealment. * * *" 26 C. J. 1167, sec. 77.

The third proposition relates to the issue of marshaling of assets. Deskins insists that the Fidelity Bank was required to do one of two things: (1) Execute its lien on the insurance policy, the corporate stock, and the vendor's lien notes and apply the proceeds to its debt, or (2) to deliver these items to him in order that he might proceed to apply them to the satisfaction of his judgment.

This issue was presented in the first foreclosure action in a contest between the American Bank and his assignors, and was determined adversely to his assignor in a final judgment. Without pausing to consider whether the parties could again contest this issue in this action, it occurs to us that there is another conclusive reason why Deskins is not entitled to this relief. Deskins has no direct lien or claim upon these items. Croskell has since died, and if the Fidelity Bank does not choose to execute its lien upon these items, it is our opinion that it must turn them to Croskell's personal representative, for it appears that he died testate. We do not understand that there is anything in Deskins' position which renders him a preferred creditor. If these items are not to be applied to the debt of the Fidelity Bank, then they revert to Croskell's estate, where Croskell's debts are to be paid as provided by our laws relating to the administration of estates of deceased persons.

Dillon, Wolfe, and Croskell occupy the position of Adolph Garner. No one contends that Adolph Garner was a purchaser of this property, or that he had any beneficial title. Since he had none, he could not pass a title.

For these reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

122

PHELPS, CORN, GIBSON, and HURST, JJ., concur.