CUMMINGS et al. v. BOARD OF ED., OKLAHOMA CITY.

No. 29509. April 21, 1942.

125 P. 2d 989.

Everest, McKenzie & Gibbens and O. A. Cargill, all of Oklahoma City, for plaintiffs in error.

W. A. Lybrand, Henry G. Snyder, and Ross N. Lillard, all of Oklahoma City, for defendant in error Board of Education.

DAVISON, J. This is an action to recover compensatory damages and penalty by reason of the wrongful expenditure of school district funds pursuant to a contract tainted with fraud at its inception.

The amount expended was $73,710. The disbursement was made by warrant on November 13, 1936. This action was instituted on December 23, 1938 (more than two years later) by the board of education of the city of Oklahoma City (hereinafter referred to as the board or school district), as plaintiff, against D. R. Cummings and Ed W. Spivey, as defendants.

The cause was tried to the court without the intervention of a jury and re-sulted in a judgment for the plaintiff in the sum of $147,420, representing double the sum expended. One-half of the amount of the judgment was designated as penalty. The amount of recovery as determined in the judgment was based upon sections 6830-6832, O. S. 1931 (70 Okla. St. Ann. §§ 131-133). The division of the sum recovered by classification of only a portion thereof as penalty was obviously made upon consideration of the case of State v. Ingram, 164 Okla. 244, 23 P. 2d 648 (decided by this court in 1933).

The defendants Cummings and Spivey present the case to this court on appeal, appearing herein as plaintiffs in error. The order of appearance is thus reversed. However, our continued reference to the parties will be by their trial court designation unless otherwise indicated. While many intricate details are reflected by the record, the facts essential to a determination of this appeal may be briefly stated.

On November 13, 1936, the school district acquired by deed from D. R. Cummings a tract of land containing about 42 acres for school site purposes for which it paid by warrant then issued the previously mentioned $73,710.

It was later learned that, in connection with the transaction and pursuant to a clandestine agreement between Cummings, the vendor, and Spivey, who was then a member of the board of education, Spivey, for his part in promoting the purchase, secretly received from Cummings a "commission" of 10 per cent of the amount of the purchase price less certain deductions made and handled in an intricate manner to satisfy income tax requirements.

The income tax complications which arose in connection with this "side consideration" in no way affect the rights of the school district, and for the purposes of this litigation we will treat the matter as though the entire 10 per cent, $7,371, passed directly into Spivey's hands.

The existence and consummation of this secret agreement became known to

the school district on July 2, 1938, when it was uncovered in connection with a grand jury investigation. Prior to that it was purposely, definitely, actively, and fraudulently concealed from all except a chosen few who enjoyed the unguarded confidence of the participants. Defendants assert in substance in this connection that the knowledge or limited knowledge of these "chosen few" removed the cloak of concealment from the transaction. Obviously, there is no merit in this position. The transaction was successfully concealed until on or about the date above mentioned. It will be so treated in our subsequent discussion.

The property is still retained by the district. Its return was not tendered in this action. The evidence intimates that its value was equal or approximately equal to the amount expended by the district; however, the trial court did not regard the value as important and the worth of the property was not judicially determined in the trial tribunal.

Additional facts will be mentioned in the subsequent portions of this opinion as the need arises. The corrupt and fraudulent nature of the transaction is too obvious to merit discussion (see Abernathy v. State of Oklahoma, 31 F. 2d 547). The facts conclusively show that the defendant Cummings became a party to one of the most dastardly and sneaking crimes covered by our penal statutes. He stands as a self-confessed bribegiver of a public official. The transaction constitutes an extremely aggravated character of fraud, since it embraces criminal characteristics of most reprehensible type, denoting dishonesty, criminal intent, and the worst form of corruption. We detest and abhor the actions of the participants of the fraud herein. However, from the standpoint of civil liability the fraudulent nature of the transaction, rather than its criminal aspect, is of paramount importance. The human tendency to condemn must not be permitted to distort the principles of law by which our decision must be controlled.

The defendants invoke the one-year statute of limitations contained in the fourth subdivision of section 101, O. S. 1931 (12 Okla. St. Ann. § 95) and applicable to an action "upon a statute for penalty." The plaintiffs seek to avoid the application of the limitation statute on the theory that the concealment of the cause of action suspended its operation—"tolled the statute."

On this point our conclusion is favorable to the defendants. We have decided that concealment of the cause of action should not have the effect of suspending the operation of the statute of limitations *insofar only as the recovery involves a penalty imposed by statute.*

On the other hand, we have also decided in connection with the recovery here involved that any and all portions of the amount recovered which can properly be classified as compensatory should be approved, although, as we shall subsequently point out, further proceedings in the trial court may be necessary to accurately determine the actual amount of injury suffered by the district.

It appears to be conceded in the briefs that insofar as that portion of the recovery which represents the penalty is concerned, the one-year period of limitation prescribed by subsection 4, sec. 101, O. S. 1931, supra, is applicable (see State ex rel. Estill v. Board of Commissioners, 119 Okla. 215, 249 P. 394: State ex rel. Gooch v. Drumright, 88 Okla. 244, 212 P. 991) unless the statute has been tolled. Plaintiff relies upon certain authorities from this jurisdiction in which we have given effect to the general rule that active fraudulent concealment of a cause of action tolls the statute of limitations. See Kansas City Life Ins. Co. v. Nipper, 174 Okla. 634, 51 P. 2d 741; Liberty Natl. Bank of Weatherford v. Lewis, 172 Okla. 103, 44 P. 2d 127; Brookshire v. Burkhart, 141 Okla. 1, 283 P. 571, 67 A. L. R. 1059; Morrissey v. Carter, 103 Okla. 36, 229 P. 510; Depuy v. Selby, 76 Okla. 307, 185 P. 107; Oklahoma Farm Mortgage Co. v. Jordan, 67 Okla. 69, 168 P.

1029; Weems v. Melton, 47 Okla. 706, 150 P. 720; Waugh v. Guthrie Gas, Light, Fuel & Improvement Co., 37 Okla. 239, 131 P. 174, L. R. A. 1917B, 1253.

It should be observed in connection with our discussion of the effect of concealment to suspend the operation of the statute of limitations that the next preceding subdivision of the statute of limitations not heretofore involved (subsection 3, sec. 101, O. S. 1931, 12 Okla. St. Ann. § 95) contains a specific exception providing that:

". . . the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

This exception has no application to the subdivision here invoked in connection with the penalty.

Ordinarily, with reference to exceptions contained in the statute of limitations, the maxim of "expressio unius est exclusio alterius" applies and the expression of the exception excludes other exceptions of a similar nature not expressed. As stated in 34 Am. Jur. 153, the general rule is:

"While the courts as a general rule no longer read into statutes of limitation exceptions which are not embodied therein, the limitation statutes of the several states usually contain general or special exceptions. . . . Such exceptions in statutes of limitation are strictly construed, and cannot be enlarged from considerations of apparent hardship or inconvenience. *The enumeration of specific exceptions by the Legislature excludes all others by implication, and usually precludes the court from creating additional exceptions by judicial construction. . . .*" (Emphasis ours.)

The application of the general rule to the case at bar would exclude the tolling of the statute with reference to the penal characteristics of this case on the theory that the expression of the exception in connection with the preceding subdivision would exclude the application of a similar unexpressed exception in connection with subdivision 4 of the statute.

However, the general rule as expressed in the text can not be accepted literally, for, notwithstanding its usual application, this court (as we have previously noted) and others have nevertheless declared that other provisions of the statute can be "tolled" or suspended by active fraudulent concealment of the cause of action or in the absence of concealment on the grounds of estoppel. Johnson v. State, 186 Okla. 80, 96 P. 2d 313.

Brief consideration, however, will convince the reflecting mind that this "court-made" exception is not appropriate in connection with a penal statute. It rests upon fraud. Fraud, when cognizable by the court, must result in some injury which the court is determined to protect. Deskins v. Fidelity National Bank of Oklahoma City, 183 Okla. 119, 80 P. 2d 265; Sharp v. Keaton, 117 Okla. 131, 245 P. 852.

While the courts recognize penalties of a civil character and enforce them pursuant to legislative mandate, they do not regard them as rights which are favored by the law. Insofar as they confer benefits on an injured party, they are in the nature of a gratuity. When based solely upon statute, these are in a sense an act of legislative grace. Viewed from the wrongdoer's standpoint, they operate as punishment. Thus statutes creating penalties are subject to strict construction.

While the courts may and do "strain a point" to toll the statute of limitations in order to protect a person whose rights would be injuriously affected by its literal application, they will not do so to enable an individual to enact a "pound of flesh" under a penal statute. Similarly, in criminal actions, concealment does not suspend the statute. Synnott v. State, 38 Okla. Cr. 281, 260 P. 517. It has been aptly said that "The time within which an action may be brought to recover a penalty is of the essence of the cause of action." 23 Am. Jur. 663.

The tolling of the statute on the ground of concealment of a cause of

action is, as we have noted, limited by statute to apply only to actions for relief on the ground of fraud, and insofar as the statute itself is concerned, such provision would not be applicable to an action to enforce a forfeiture or a penalty. The rule announced and applied in the cases previously cited is not a rule of construction of the statutory provisions relating to limitation of actions, but constitutes a "court-made" exception thereto and provides for a tolling of the statutes of limitation upon a showing of active concealment of the facts essential to the establishment of a cause of action. It is predicated upon the general proposition that one should not be permitted to profit by his own wrong to the injury of another. The rule is well established in this jurisdiction and must be given effect when invoked in a proper case. The question presented here is whether or not it may be invoked in an action to enforce a penalty or a forfeiture.

In 1 Am. Jur. 431, Actions, sec. 39, it is pointed out that a penal action is one founded entirely upon a statute, the only object of which is to recover a penalty or a forfeiture imposed as a punishment for a certain specific offense, while remedial actions are those which are brought to obtain compensation or indemnity. Penal actions constitute a very definite class of cases. There are certain rules which have application to such actions which do not apply to remedial actions wherein the object sought is indemnification or compensation.

It is sometimes difficult to determine whether a statute should be construed to be penal or remedial. In the case of Huntington v. Attrill, 146 U. S. 657, 13 S. Ct. 224, 36 L. Ed. 1123, the distinction between these two classes of cases was clearly drawn. Therein it was said:

"The action of an owner of property against the hundred to recover damages caused by a mob was said by Justices Willes and Buller to be 'penal against the hundred, but certainly remedial as to the sufferer.' Hyde v. Cogan, 2 Dougl. 699, 705, 706. A statute giving the right to recover back money lost at gaming, and, if the loser does not sue within a certain time, authorizing a qui tam action to be brought by any other person for threefold the amount, has been held to be remedial as to the loser, though penal as regards the suit by a common informer. Bones v. Booth, . W. Bl. 1226; Brandon v. Pate, 2 H. Bl. 308; Grace v. M'Elroy, 1 Allen 563; Read v. Stewart, 129 Mass. 407, 410; Cole v. Graves, 134 Mass. 471. As said by Mr. Justice Ashhurst in the King's Bench, and repeated by Mr. Justice Wilde in the Supreme Judicial Court of Massachusetts, 'it has been held, in many instances that, where a statute gives accumulative damages to the party grieved, it is not a penal action.' Woodgate v. Knatchbull, 2 T. R. 148, 154; Read v. Chelmsford, 16 Pick. 128, 132. Thus a statute giving to a tenant, ousted without notice, double the yearly value of the premises against the landlord, has been held to be 'not like a penal law where a punishment is imposed for a crime,' but 'rather as a remedial than a penal law,' because 'the act indeed does give a penalty, but it is to the party grieved.' Lake v. Smith, 1 Bos. & P. (N.R.) 174, 179, 180, 181; Wilkinson v. Colley, 5 Burr. 2694, 2698. So in an action given by statute to a traveler injured through a defect in a highway, for double damages against the town, it was held unnecessary to aver that the facts constituted an offense, or to conclude against the form of the statute, because, as Chief Justice Shaw said: 'The action is purely remedial, and has none of the characteristics of a penal prosecution. All damages for neglect or breach of duty operate to a certain extent as punishment; but the distinction is that it is prosecuted for the purpose of punishment, and to deter others from offending in like manner. Here the plaintiff sets out the liability of the town to repair, and an injury to himself from a failure to perform that duty. The law gives him enhanced damages; but still they are recoverable to his own use, and in form and substance the suit calls for indemnity. Reed v. Northfield, 13 Pick. 94, 100, 101.

"The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public, or a

wrong to the individual, according to the familiar classification of Blackstone: 'Wrongs are divisible into two sorts or species: private wrongs and public wrongs. The former are an infringement or privation of the private or civil rights belonging to individuals, considered as individuals; and are thereupon frequently termed civil injuries; the latter are a breach and violation of public rights and duties which affect the whole community, considered as a community; and are distinguished by the harsher appellation of "crimes and misdemeanors." ' 3 Bl. Comm. 2."

Thus, as indicated, multiple recovery statutes are not always, nor in all jurisdictions, classified as penal. That classification is sometimes avoided where the amount of recovery bears a direct proportionate relation to the actual damages suffered and the amount of actual damages is merely multiplied.

Although the exact question presented here has never been determined by this court, we have consistently held these "informer" statutes to be penal in nature and have required strict compliance with their provisions in order to sustain recoveries based thereon. See State ex rel. Mitchell v. City of Shawnee, 167 Okla. 582, 31 P. 2d 552, 92 A.L.R. 948; State v. Elk City, 178 Okla. 521, 62 P. 2d 1203; Vaughan v. Latta, 168 Okla. 492, 33 P. 2d 795.

In the case of Tiffany v. National Bank of Missouri, 18 Wall. 409, 21 L. Ed. 862, it was held that in an action to recover a statutory penalty, the statute must receive a strict, that is, a literal, construction and that the defendant should not be subjected to a penalty unless the words of the statute plainly impose it.

In the case of United States v. Harris, 177 U. S. 305, 20 S. Ct. 609, 44 L. Ed. 780, it was said:

"We cannot better close this discussion than by quoting the language of Chief Justice Marshall, in the case of United States v. Wiltberger, 5 Wheat. 76, 5 L. Ed. 37:

" 'The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the legislative, and not in the judicial, department. It is the Legislature, not the court, which is to define a crime and ordain its punishment.' "

In the case of Peoples National Bank & Trust Co. v. Pora, 212 Ind. 468, 9 N. E. 2d 83, 111 A.L.R. 1402, 1407, it was said:

"Lewis' Sutherland Statutory Construction, sec. 521, is as follows:

" 'A penal statute cannot be extended by implication or construction. It cannot be made to embrace cases not within the letter, though within the reason and policy, of the law. "It is axiomatic that statutes creating and defining crimes cannot be extended by intendment, and that no act, however wrongful, can be punished under such a statute unless clearly within its terms." Although a case may be within the mischief intended to be remedied by a penal act, that fact affords no sufficient reason for construing it so as to extend it to cases not within the correct and ordinary meaning of its language. And as a general rule, where a penalty is affixed by a statute to an act or omission, such penalty is the only punishment or loss incurred by the guilty party. To constitute the offense, the act must be both within the letter and spirit of the statute defining it. Penal statutes can never be extended by mere implication to either persons or things not expressly brought within their terms.' "

See, also, Providence Steam-Engine Co. v. Hubbard, 101 U. S. 188, 25 L. Ed. 786; State of Ohio v. Associates Investment Co., 136 Ohio St. 456, 26 N. E. 2d 457, 129 A.L.R. 1074.

The statutes upon which this action is predicated, that is, sections 6830-6832, O. S. 1931, supra, were enacted as sections 31-33, art. 5, ch. 219, S. L. 1913. Section 101, O. S. 1931, supra, was then in force and effect as section 4657, R. L. 1910. The applicable language found in the 4th subdivision of the statute is:

"Within one year: . . . An action upon a statute for penalty or forfeiture, except where the statute imposing it prescribes a different limitation."

In this instance the statute imposing the penalty did not prescribe a different limitation. The result is the same as if the Legislature had enacted the limitation already fixed into the statute which imposed the penalty. The one-year period so fixed cannot be extended to embrace a case which is not within the letter of the law, since the rule of strict construction is applicable and since concealment does not operate to suspend the statutes. The recovery for the penalty cannot stand.

The defendants also take the position that the sum recovered herein should be regarded as a penalty imposed by statute and that the whole amount should be declared barred by the one-year limitation period above mentioned. This position is not well founded in this case and cannot be approved.

At this point it is appropriate to observe that a statute may be penal in one respect and remedial in another, and that when different portions of the statutes of limitation apply to different portions of the statute they should be so employed. 37 C. J. 790; Brown v. Quincy, etc., R. Co., 198 Mo. App. 71, 199 S. W. 707.

Much of the language in our earlier opinions (prior to the case of State v. Ingram, 164 Okla. 244, 23 P.2d 648) lends support to the argument (see cases reviewed and analyzed in State v. Ingram, supra), and indeed some color to the position taken is afforded by subsequent utterances of this court wherein we have alluded to the statutes under consideration, or statutes of the same import with more comprehensive application (see secs. 5964, 5965, O. S. 1931; State v. Oklahoma Natural Gas Corporation, 177 Okla. 62, 57 P. 2d 626; State ex rel. Mitchell v. City of Shawnee, 167 Okla. 582, 31 P. 2d 552; Randolph v. State, 169 Okla. 440, 37 P. 2d 648; State v. Elk City, 178 Okla. 521, 62 P. 2d 1203), as penal in character without intimating that any portion or application of the statute or of recovery thereunder should be considered as remedial and compensatory.

The argument advanced is calculated to provoke some speculation as to the soundness of our decision in the Ingram Case, wherein we interpreted the statute and held that recovery under it (in that case secs. 5964, 5965, O. S. 1931) comprehended and included compensatory liability as well as penalty and that a surety of an official bond could be joined in an action under the statute and held liable in so far as compensatory elements are concerned.

However, this is not an appropriate occasion to reconsider the rule announced in the Ingram Case, if, as intimated, it should be reconsidered. For, as we shall see, the result herein must be the same regardless of whether that rule is followed or ignored.

The district in instituting and prosecuting this suit sought recovery of the sum of $73,710 to compensate it for its injury, and a like sum as penalty. In its petition it asserted its disposition to rescind rather than affirm the contract. It did not, however, combine its assertion in this respect with a tender of the property which, as we shall see, it should have done if it wished to identify the recovery of the entire purchase price as compensatory damages as distinguished from penalty under the statute as applied and construed in the Ingram Case or as would be a necessary condition to the successful maintenance of its action if it expected recovery independent of the statute.

In this connection it pleaded:

"Plaintiff alleges, states and would show to the court that said contract having been made, and the consideration therefore having been paid, contrary to law in such case made and provided and by reason of the facts herein above set forth, same being fraudulant and void, should by the court be rescinded, avoided set aside, and held for naught. . . ."

Perhaps its omission in this respect was due to the fact that it thought no

part of the recovery was affected by the statute of limitations and that the classification thereof was therefore unimportant, since, if the statute were applicable in its entirety, recovery of double the amount expended was possible without tender, if not otherwise barred. On the other hand, it may have misapprehended the extent of our holding in the Ingram Case and thought a new measure of compensatory damages in connection with liability for fraud was established.

The district did, however, declare its disposition to return the property, since that would be a necessary incident to a complete rescission. But its intention in this respect is not clearly expressed and not entirely certain. The court is not advised just when, how, or under what circumstances such a return is contemplated, if it is. And the right of the defrauding party to seek a return in an independent subsequent action is somewhat doubtful (see discussion in J. B. Klein Iron & Foundry Co. v. Board of Com'rs of Canadian Co., 178 Okla. 72, 61 P. 2d 1055).

We have permitted ourselves to digress for the moment slightly beyond the requirements of the precise question now being considered. The vital point is that the district is herein seeking to be compensated for its loss, as well as trying to recover penalty. And the rules of pleading are not so strict in this jurisdiction that the relief which it seeks cannot be accorded in this action even though it has misapprehended its measure of damages, or the effect of our former decisions. So, regardless of whether its right to compensatory damages falls under or outside the statute, the pleading is broad enough to assert the right and invoke the protection of the court, provided the conditions upon which the assertion of the right depend can be met. Incidentally, the fact that the plaintiffs did not actually plead the measure of damages is immaterial. Bowles v. Brown, 187 Okla. 264, 102 P. 2d 837; Winemiller v. Lorton, 121 Okla. 99, 249 P. 406.

Perhaps, then, the proper sequence of treatment is to determine the rights of the district from a compensatory standpoint independent of the statute and then see if those rights have been enlarged by statute.

It is well settled in this jurisdiction that when a purchaser is defrauded he is entitled to elect whether he will rescind the contract, return the property, and sue to recover the purchase price; or affirm the contract and sue for damages, but it is equally well established that he cannot do both. Witt v. Garrod, 187 Okla. 14, 101 P. 2d 619; Abernathy v. State, supra; Viking Refrigerators, Inc., v. McMeachin, 145 Okla. 76, 291 P. 521; Meyer & Greenwald Construction Co. v. Salina Gravel Co., 136 Okla. 214, 277 P. 274; Brown v. Nichols, 117 Okla. 233, 245 P. 850; Holcombe & Hoke Mfg. Co. of Indianapolis, Ind., v. Jones, 102 Okla. 175, 228 P. 968; Jeter v. DeGraff, 93 Okla. 76, 219 P. 345; Good v. Story, 91 Okla. 3, 215 P. 614; Crouch & Son v. Huber, 87 Okla. 83, 209 P. 764; Byers v. Brisley, 81 Okla. 215, 198 P. 90; Reger v. Henry, 48 Okla. 759, 150 P. 722.

In general the measure of damages upon affirmance by the vendee of a contract of purchase, voidable for fraud, is the difference between the contract price and the value of the property at the time of sale. Silverwood v. Carpenter, 51 Okla. 745, 152 P. 381. In this connection it is also proper to consider that if a purchaser has made a good bargain independent of the fraud he is entitled to the "benefit of the bargain" when upon affirmance the contract is purged of the fraud through damages. Notice, generally, 24 Am. Jur. 55, Fraud and Deceit, par. 227. Similarly, when one who functions as an agent (as Spivey did in this case) misrepresents to the one for whom he purports to act the price at which an owner is willing to part with his property, he is liable in damages by reason of the fraud committed to his principal (in this case the school district) for the amount of a secret commission surreptitiously ob-

tained. As this court stated in Stevens v. Reilly, 56 Okla. 455, 156 P. 157:

"Where a purchaser of property from a broker was induced to pay more than the owner asked for the property, by the fraudulent representation of the broker that the owner would not accept less than the price paid, and the confidential relations between the broker and purchaser were such that he believed the broker's statements and relied thereon to the extent that he failed to make further inquiry as to the price at which the land could be bought from the owner, the purchaser is entitled, in an action for deceit, to recover from the broker the excess, which he pocketed, less the usual commission for making the sale."

And it would seem to follow without question that where the owner colludes with the one acting as agent for a school district or assists in the fraud he likewise is liable, since the basis of recovery is the fraud and the amount received is the measure of recovery. It does not mitigate against the application of the foregoing rule as an element of damages for fraud that the same result could be obtained against the agent Spivey in this case or on the theory of a duty to account for commissions secretly acquired. 2 Am. Jur. 216; Testerman v. Burt, 143 Okla. 220, 289 P. 315; Clark v. Pratt, 93 Okla. 250, 220 P. 903. Thus, in this case, if the school district retains the real estate, it is entitled to recover from the defendants, as compensatory damages for the fraud perpetrated on it, the difference between the value of the real estate at the time of sale and the price paid, but in no event less than $7,371. The latter figure becomes important only if it should be judicially determined that the difference between the value of the real estate and price paid is less than that sum, for even though the school district received full value for its money, as some portions of the record intimate, it is still entitled to the benefit of the bargain which, with fraud deleted, the owner was offering.

On the other hand, if it makes good its decision to rescind with an adequate tender upon proper condition, it is entitled to its money back.

The importance of the portion of the rules above reviewed which prevent recovery of the purchase price and retention of the property should not be overlooked. The law recognizes that such inconsistent action would in many cases, and perhaps in this case, result in a recovery of a sum of money far in excess of the amount necessary to make the district whole. To the extent such recovery exceeds the reasonably adequate compensatory damages it would be and is penal in character, and to the extent a statute may be said to authorize such recovery it is penal.

In Gardner v. Rumsey, 81 Okla. 20, 196 P. 941, at page 945, this court pointed out:

"A statute which purports merely to make a person liable for the actual damage his wrongful act may cause another is remedial. It merely makes compensation, reimbursement, reparation. It remedies a wrong. But a statute which provides that a person doing a certain act shall incur a certain liability, without regard to whether doing that act injured any one or not, without regard to the relation between the extent of the injury and the liability, is not compensatory, but rather in the nature of a punishment for the nonperformance of an act, or the performance of an unlawful act. *Everything awarded in excess of the actual injury caused is for the purpose of punishment.* The purpose of liability in excess of actual compensation is by means of the penalty, to deter the wrongdoer from perpetrating the wrong, and this is the object of all punishment." (Emphasis ours.)

See, also, 21 R. C. L. 206; 23 Am. Jur. 624, par. 29.

It is true, as we pointed out previously in this opinion and in Ingram v. State, supra, that the same statute may be classified as both penal and remedial, and that recovery under the same statute may be classified as partly compensatory and partly penal.

It is also true that in the Ingram Case recovery under the statute was one-half

penalty and one-half compensatory, but the recovery in this case cannot be so divided if the district retains the real estate, although it is subject to the same division if adequate provision for a return thereof is made.

This court has already pointed out (Board of Education of Oklahoma City v. Cloudman, 185 Okla. 400, 92 P. 2d 837) that the statute, section 6831, supra, as interpreted in the Ingram Case did not operate to enlarge the common-law liability. We therein said:

"Section 6831, above, so far as the question of fundamental liability is concerned, does not enlarge upon the common law. See State ex rel. Sheel v. Ingram, 164 Okla. 244, 23 P. 2d 648. . . ."

Further elaboration on this point is unnecessary.

The defendants also take the position that penal recovery should be denied by reason of immunity alleged to have been acquired by giving of testimony tending to incriminate. Since the penal features of the judgment are eliminated on other considerations, the discussion of this point is unnecessary.

It follows from our conclusions above announced that all portions of the trial court's judgment authorizing the recovery of penalty must be eliminated. This, in any event, includes the $73,710 specifically designated in the judgment of the trial court as penalty and it may include a portion of the remaining $73,710, depending on the future attitude of the school district.

The judgment for the last mentioned $73,710 may be judicially approved only if the school district elects to properly tender a reconveyance of the real estate. If the school district does not so elect and decides to retain the real estate, a new trial must be granted for the sole purpose of determining compensatory damages in accord with the measure thereof previously stated in this opinion, that is, the difference between the purchase price of the land and its actual value at the time of sale, but in no event less than $7,371.

A reasonable time should be allowed by the trial court for the school district to make its election.

The cause is reversed, with directions to enter judgment for the defendants as to the $73,710 denominated penalty. As to the remaining portion of the judgment, also amounting to $73,710, the trial court shall proceed in accord with the views hereinbefore expressed.

The judgment is therefore conditionally affirmed; otherwise reversed.

WELCH, C. J., CORN, V. C. J., and BAYLESS, J., concur. ARNOLD, J., concurs specially. RILEY, OSBORN, GIBSON, and HURST, JJ., dissent.

---

ARNOLD, J. (specially concurring). The Constitution of the State of Oklahoma provides:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided"; and "No person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence." (Sections 21 and 27, art. 2, of the Constitution.)

By the plain, simple, and direct language of these provisions of the Constitution, obvious purpose of the sovereign people is inescapable; by these provisions it is evident that the people of the State of Oklahoma never intended that one who was forced to give testimony that would tend to incriminate him should thereafter be prosecuted or subjected to any kind or character of penalty or forfeiture. It was intended by the people that no one should be compelled to incriminate himself unless the sovereign state determined that it would be in the interest of the public welfare to require such incrimination.

When the sovereign people wrote the Constitution they knew that instances would arise wherein great frauds and conspiracies could not be uncovered without the testimony of some one of

the thieves, embezzlers, or conspirators and that the public interest and rights of innocent people would, therefore, demand in some instances that a guilty person be used to uncover such filthy, insidious, and corrupt situations as herein exposed. In order to protect the general public by uncovering such corruption as was uncovered in the school board cases, the people themselves said that "no person" in such a situation, who is compelled to give testimony that will incriminate himself, "shall be *prosecuted* or *subjected* to *any penalty* or *forfeiture* for or on account of *any transaction, matter* or *thing* concerning which he may so testify or produce evidence." To hold, as contended for by the plaintiff, that these provisions of the Constitution are not applicable in civil actions or to hold that one who has been compelled to give testimony against himself may thereafter be forced to respond in damages in excess of actual damages would violate the very purpose and intention of the people expressed in their Constitution and would in fact prevent, as this record so eminently illustrates, the uncovering of such heinous and fraudulent practices of the guilty members of the old school board as disclosed by this record and other adjudicated cases.

It could not be reasonably expected that one, such as Cummings in the instant case, would ever tell the truth and thereby incriminate himself to uncover a fraud, such as that involved herein, if he thought that his immunity would not protect him against penalty or forfeiture in civil matters connected therewith; or, in other words, subject him to more than actual damages. This illustrates in a practical way why a rule applying these provisions of the Constitution only in criminal cases would thwart the purposes of the people to uncover such corrupt situations. So, to carry out the will and purpose of the people expressed in the foregoing provisions of the Constitution, Cummings, though a confessed bribegiver, must not be subjected to the repayment of any sum for any purpose in excess of the actual damage he produced or participated in.

We know by this record that Cummings paid a bribe of $7,371. The plaintiff prosecuted its lawsuit against him on the theory that he could be made to respond in damages in accordance with certain statutes of the state providing penalty or forfeiture. The majority opinion correctly covers the issues as to the applicability of these statutes under all the facts and circumstances. This leaves the case as one for damages. The only evidence of actual, damages shown is the amount of the bribe paid. In my opinion, the judgment of the lower court should be affirmed in this amount. However, I can see no great injustice to the parties to permit a retrial of the cause giving the school board, as now constituted, the opportunity of returning the land and refunding the price paid less such actual damages as would flow from the transaction itself, or if it determines to keep the land, recover from Cummings all actual damages it may be able to show that the school board suffered by such transaction.

---

RILEY, J. (dissenting). D. R. Cummings, a resident of Oklahoma City, owned 42.12 acres of land (known as the Northwest High School building site). Ed W. Spivey once had the honor and privilege of being a member of the board of education of the city of Oklahoma City. A fraudulent and void contract was entered into between Mr. Cummings and the said board whereby for the consideration of $73,710 the board ostensibly purchased and Cummings ostensibly sold to it the said building site.

The only reason appearing of record why the transaction was not bona fide from beginning to end was that, according to the testimony of Mr. Cummings, he paid a side consideration in the nature of a bribe to Spivey in an amount represented by 10 per centum of the said consideration, less contemplated

or necessary income tax on the bribe and other incidental expenses in connection therewith, contemporaneously with the disbursement of the public funds which was made by school district warrant dated November 13, 1936.

This action was commenced December 23, 1938, more than two years after disbursement of funds aforesaid. A jury was waived and judgment went for plaintiff in double the amount of the public funds so disbursed, but one-half of the amount of the judgment was designated a penalty. It must be conceded that the penalty imposed derived whatever justification attached to it from sections 6830-6832, O. S. 1931, 70 O. S. 1941 §§ 131-133, and interpretation of the meaning of those statutes made in State v. Ingram, 164 Okla. 244, 23 P. 2d 648. Therein it is held that recovery of the principal is not a penalty, but a joint and several liability owing to the municipal subdivision affected by fraudulent acts. But see State ex rel. Mitchell v. City of Shawnee, 167 Okla. 582, 31 P. 2d 552, construing the statute strictissimi juris to the extent that a representative suit brought under it abates upon the death of plaintiff. It is said the right of action, under the statute, is purely statutory, personal and governed by the rule actio personalis moritur cum persona. That was purely a qui tam action, whereas the action at bar is not. Moreover, in the absence of such a statute, nevertheless the school district would be entitled to recover its funds illegally expended, and so under the common law put in force within the State of Oklahoma in aid of statutes. Mr. Cummings and Spivey appeal.

It appears of record that the bribery became known to the other members of the school board on or about, or before, July 2, 1938, when Mr. Cummings testified at the solicitation of the State of Oklahoma, acting by and through its officer, the county attorney of Oklahoma county, the Honorable Lewis R. Morris. Prior thereto, if the fraud was known to members of the school board or any of them, it was purposely concealed.

Mr. Cummings and Spivey contend that knowledge of their fraud was so widespread that the school district, acting by and through the present incumbents, will not be heard to say that the fraud was not known to it long before the grand jury's revelation of it. A court of justice will not tolerate a plea of estoppel based upon wrong of a movant.

The public wrong is obvious and admitted; nevertheless, restitution together with penalty and forfeiture is sought to be obviated by reason of the statutes of limitation, and especially that contained in the fourth subdivision of section 101, O. S. 1931, 12 O. S. 1941 § 95, limiting civil actions, other than for the recovery of real property, after the accrual of the cause of action, to one year when it is based upon "a statute for penalty or forfeiture," except where the statute imposing the penalty otherwise prescribes. There is no merit in this contention insofar as restitution to the treasury of the school district of the ill-gotten gains of defendants is concerned. The bribe was agreed upon and became due and payable under the plan on or about November 13, 1936. It became publicly known on or about July 2, 1938. This action was commenced December 23, 1938, well within a year after discovery of the fraud.

The third subdivision of section 101, supra, permits an action within two years for taking or detaining personal property and for the specific recovery of personal property and for relief on the grounds of fraud, and provides that the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud.

This action for the taking and detention of the public funds was brought in ample time, but, insofar as a penalty is concerned, the action is banned by the fourth subdivision, supra. The acts of defendants, under admitted facts constituting this cause of action, are not only illegal—they are void. They are not only malum prohibitum; they are malum in se. The acts and deeds are not capa-

ble of ratification by the school district; they constitute a felony of which Spivey stands convicted, and doubtless for which Mr. Cummings would have been convicted but for the additional fact that he took recourse to the law providing immunity from criminal liability and forfeiture against the party to the crime. A part of the law of immunity is the statute on bribery, providing that he "who shall first furnish information in relation thereto, as against the other parties and in any prosecution therefor, shall testify to the same truthfully and fully" shall have his immunity both as to his person and his property. Section 1916, O. S. 1931, 21 O. S. 1941 § 391. In event the succeeding members of the school board knowingly ratified or confirmed these acts or this conduct of Spivey or Mr. Cummings, it could be logically said that they and each of them likewise, but for some saving grace, would be guilty of felonious conduct.

As aforesaid, Mr. Cummings, apparently being well advised and knowing the law, when called to testify stood on his constitutional rights (sec. 21, art. 2, Const. of Okla.) "No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution specifically provided; . . ." The exception applicable here is that provided by section 27, art. 2, Const.:

"Any person having knowledge or possession of facts that tend to establish the guilt of any other person . . . charged with an offense against the laws of the state, shall not be excused from giving testimony or producing evidence, when legally called upon so to do, on the ground that it may tend to incriminate him under the laws of the state; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence."

Mr. Cummings indicated his willingness to testify, but declined to do so because the facts about which he was interrogated tended to incriminate and jeopardize him. The witness was admonished by the learned trial judge to "answer the question," and so he did. Ex parte Gudenoge, 2 Okla. Cr. 110, 100 P. 39; Scribner v. State, 9 Okla. Cr. 465, 132 P. 933.

Self-incrimination is self-abnegation and so contrary to the laws of nature, and in disregard of Deity. Being so, the state will not require incrimination in any case except when the evidence is deemed necessary for the good of society. In such cases freedom from criminality with attendant liability of penalty or forfeiture is vouchsafed by the highest of mandates, so that the true facts may be known, and all others, save and except the witness, when charged of crime, may be adjudged, in a court of justice, guilty or not guilty, according to the law and relating facts immunity is granted.

Mr. Spivey and Cummings, invoking the one-year statute of limitations prescribed in the fourth subdivision of section 101, supra, treat the judgment rendered as constituting in whole an indivisible penalty or forfeiture. It is not so; the judgment in this case consists of two parts and to the extent of double the amount of the public funds fraudulently and feloniously expended to them, the judgment is erroneous. However, this is a matter publici juris, and being so, the duty devolves upon the Supreme Court to declare the law, in the public interest, applicable to the judgment reviewed under the issues presented by the pleading and sustaining evidence of record.

The one-year statute of limitations pleaded does not save Spivey or Mr. Cummings from making restitution of the whole of the public funds so expended. As to restitution in the amount of $73,710, under the rule of National Surety Co. v. State, 111 Okla. 180, 239 P. 257, and State for Use of Board of Comr's of Osage County v. McCurdy, 115 Okla. 111, 241 P. 816, cited, quoted, and approved in Abernathy v. State of Oklahoma (C. C. A.) 31 Fed. 2d 547, Spivey and his bondsmen might have been liable for five years had the action been predicated upon his official bond.

Moreover, had the fraud never been discovered, Mr. Cummings and Spivey would be liable for two years thereafter, for these are public funds and these defendants would in that event be trustees ex maleficio and accountable. At any rate, under the three-year statute of limitations, aforesaid, this action, insofar as it seeks restitution of public funds, is well within that time.

If the one-year period of time, applicable to a penalty, and provided by sections 6830-6832, O. S. 1931, 70 O. S. 1941 §§ 131-133, had not run, an additional amount would have been recoverable as a penalty against Mr. Spivey, who acted corruptly as a public official and as an individual, by indefensible action he became the agent and tool of the bribegiving vendor, to the consideration of tainted money. Both defendants were in pari delicto, and being so, the law would ordinarily leave them where it found them—in corruption. But as to Mr. Cummings, that is not possible. The state in criminal prosecution of Spivey secured the testimony of Mr. Cummings, and in order to secure it Mr. Cummings was secured in all his personal and property rights involved. The testimony of Cummings, being vouched for by the state, was a verity. The witness, like Achilles of old, became purged of his crime, as at common law he prayed his clergy, read from the book — legit et clerico, and was consionered of benefit to the realm, and had his purgation according to law, insofar as penalty or forfeiture against Mr. Cummings is concerned, the witness is as pure as the driven snow—Achilles like, he has been "dunked" according to the vernacular, but like Achilles he has a vulnerable spot. It is where he was held when he was immersed. He must make restitution according to law. In view of his newly-acquired innocence and purity, the law requires that he give up his ill-gotten gains, the amount of which is more than the historic thirty pieces of silver, indeed more than the amount of the bribe about which Mr. Cummings testified resulting in the part-

ing of ways of Mr. Cummings and his agent and tool. It is the amount that he feloniously and fraudulently obtained from the treasury of the municipal subdivision of government by, with, and through the medium of his tool and agent, Spivey, who for his own interest did not see fit to be the first to give evidence of the fraudulent and felonious plan and scheme. But then Spivey could not serve two masters and at the same time serve his own interests and receive the "commission," as that term was so politely and federally used. That commission was not received in the interest of the people, Spivey's primary principal, nor yet in the interest of his secondary principal, Mr. Cummings, but in his own selfish interest. He did not perform the duties of a public servant in any respect, i.e., "to look singly to the good of his master," but as an unfaithful servant and as a corrupt and selfish individual, he sought "to line his own pockets with ill-gotten gains," and now he must account to his primary principal, the school district, for all property that by his felonious acts corruptly passed from it. He can avoid double that amount as a penalty only by virtue of the one-year statute of limitations. His duty as a public servant may not be forgotten or forgiven insofar as restitution of public funds is concerned. United States v. Mammoth Oil Co., 14 Fed. 2d 705. A government official, who makes or procures a contract for the government and receives pecuniary gain in connection therewith, commits a fraud upon his government and it matters not that the government suffers no pecuniary loss or that the contract may be advantageous to the government. Such a contract by fraud is tainted; it is corruption—destructive of government. At the option of the government the transaction is void, for government is dependent upon honesty of administrator. Detriment to the government need not be shown; it is inherent in the transaction. It is preposterous to assume that such an agent could gamble on the chance of discovery and assure himself that in event of it his civil lia-

bility would be limited to his bribe and that the innocent principal could be compelled to keep the property or that the faithless agent could find witnesses to "Babelize" its value so as to save the judgment in equity, inclusive of the bribe.

Under the Justinian law expressed in the phrase "Safety of the State is the highest law" and upon this plane of public policy equity gives way to the law. The law closes the door to temptation. Providence Tool Co. v. Norris, 2 Wall. 45, (17 L. Ed. 868). "The principle which prevents an agent from contracting with himself, or from entering into any agreement which gives him an interest conflicting with his duty, applies more strongly to officers, servants, and agents of a municipal government than to private parties." 1 Dill. Mun. Corp. sec. 444; City of Findlay v. Pertz et al. (C. C. A.) 66 F. 427, 29 A. L. R. 188. It applies with equal force to agents of foreign governments when they appear in American courts of justice. Oscanyan v. Winchester Repeating Arms Co., 103 U. S. 261, 26 L. Ed. 539; Abernathy v. State of Oklahoma, 31 Fed. 2d 547. State or municipal officers so remiss in performance of their public trusts are so bound by the law. Cheney v. Unroe, 166 Ind. 550, 77 N. E. 1041, 117 Am. St. Rep. 391. While eminent council for defendants concede that an agent's acts, while acting in a dual capacity, are voidable as counterdistinguished from void, it is insisted that the remedy is limited to recovery of the secret commission. The concession is rejected by the law, which indulges several remedies, and in the cause at bar the plaintiff has not seen fit in election of remedies to rescind the contract and sue at law for the consideration unlawfully paid. Nor has the plaintiff offered, as a part of that remedy, to restore to the parties sued that which was received by virtue of the contract. Howe v. Martin, 23 Okla. 561, 102 P. 128; Byers v. Brisley et al., 81 Okla. 215, 198 P. 90; Jeter v. De Graff, 93 Okla. 76, 219 P. 345. They are cases where the seller was sued. Herein both the seller and the agent are

joined, not in equity for rescission and cancellation of a contract, but in damages and for recovery of public funds wrongfully disbursed. It is contended the school district suffered no loss because the real estate feloniously purchased is worth the amount expended. If that were true, according to defendants' witnesses, it seems quite foolhardy to bribe and corrupt in order to sell such land.

The school district presumably has need of the land. If an appropriation of it has not been made according to law, any party concerned may proceed under liberality of the statute in condemnation proceedings, or yet a court of equity is available to either party defendant, in event they or either of them have suffered wrong and they or either of them may successfully proceed there in event their hands are cleansed.

The school district is not required to accept the result of perfidy and chicanery in order to secure return of money wrongfully extracted from the public treasury, but may elect, as it has done, to hold liable as for money had and received those who obtained that money wrongfully and were thereby unjustly enriched. City of Findlay v. Pertz, supra. 13 C. J. 410.

In cases involving acts mala prohibita, the courts will take notice of the circumstances and will give relief, if justice and equity require restoration of property received by either party, but not so with agreements to commit a crime, all acts in connection therewith are contrary to public policy and so void. The courts must leave the briber where he stands, and deny him any benefit from the contract, and the school district in a proper action therefor may obtain a cancellation of the contract obtained by bribery, "without returning or offering to return the money paid by the briber upon the contract." State v. Cross, (Kan.) 17 P. 190. This does not amount to a forfeiture as prohibited by the Constitution. It amounts to a mere selection of remedies and affords Mr. Cummings an oppor-

tunity to select his own remedies either at law, under special proceedings, or in equity, for the recovery of the real estate that was his prior to his voluntary but corrupt act in transferring title thereto to the board of education of the city of Oklahoma City.

As modified by elimination of the penalty provision, the judgment should be affirmed.